FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ ---- JUL 27 2011 ★

LONG ISLAND OFFICE

**NO SUMMONS ISSUED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
DON LIA, MOBILE MANAGEMENT, LLC
and N.R. AUTOMOTIVE, INC,

                                    Plaintiff,

-against-

MICHAEL SAPORITO and
JESSE ARMSTEAD,

                                    Defendants.
-------------------------------------------------------------------x

**NOTICE OF REMOVAL**

**CV - 11 - 3621**

Docket No.

**FEUERSTEIN, J**

**BOYLE, M**

Defendant, MICHAEL SAPORITO ("Saporito") hereby files this Notice of Removal of the above-described action to the United States District Court for the Eastern District of New York from the Supreme Court, State of New York, County of Nassau, where the action is now pending and states:

1. Saporito and Jesse Armstead ("Armstead") are the defendants in the above-entitled action.

2. The action was commenced in the Supreme Court, State of New York, County of Nassau, and is now pending in that court. Process was served on defendants on July 6, 2011. A copy of the plaintiff's Complaint setting forth the claims for relief upon which the action is based is attached as Exhibit A. Defendants first received notice of such Complaint on July 6, 2011.

3. The action is a civil action for breach of contract, specific performance, breach of fiduci-

**ORIGINAL**

ary duty, declaratory judgment, constructive trust, unjust enrichment, and accounting. The United States District Court for the Eastern District of New York has jurisdiction by reason of the diversity of citizenship of the parties.

4.  Plaintiff, Don Lia ("Lia"), is now and at the time the state action was commenced a citizen of the State of New York. (Ex. A at ¶ 1).

5.  Plaintiff, Mobile Management, LLC ("Mobile"), is now and at the time the state action was commenced a New York State limited liability corporation. (Ex. A at ¶ 2). Upon information and belief, the members of Mobile are New York State citizens.

6.  Plaintiff, N.R. Automotive, Inc. ("N.R."), is now and at the time the state action was commenced a New York State corporation. (Ex. A at ¶ 3).

7.  Defendant, Saporito, is now and at the time the state action was commenced, a citizen of the State of New Jersey. (Ex. A at ¶ 4).

8.  Defendant, Armstead is now and at the time the state action was commenced, a citizen of the State of Texas. (Ex. A at ¶ 5).

9.  The matter in controversy exceeds $75,000. No change of citizenship of parties has occurred since the commencement of the action. Defendants are not citizens of the state in which the action was brought. (Ex. A at pp. 16-19).

10. A copy of all process, pleadings, and orders served upon defendants is filed with this notice.

11. Co-defendant Armstead joins and consents in the removal.

12. Defendant, Saporito, will give written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

13. A copy of this notice will be filed with the clerk of the Supreme Court, State of New York, County of Nassau as required by 28 U.S.C. § 1446(d).

14. Accordingly, removal is appropriate based on diversity jurisdiction because all plaintiffs are citizens of the State of New York, all defendants are citizens of states other than New York, and the amount in controversy exceeds the jurisdictional requirements.

WHEREFORE, defendant Saporito requests that this action proceed in this Court as an action properly removed to it.

Dated: Carle Place, New York
         July 26, 2011

LEEDS MORELLI & BROWN, P.C.
Attorneys for Defendant Saporito
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550
mweinick@lmblaw.com

_____
MATTHEW WEINICK

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------X
DON LIA, MOBILE MANAGEMENT,          :
LLC and N.R. AUTOMOTIVE, INC.        :     Index No. 9698 /11
                                     :     Date Purchased: June 30, 2011
                  Plaintiffs,        :
     - against -                     :
                                     :
                                     :
MICHAEL SAPORITO and                 :     **SUMMONS**
JESSE ARMSTEAD,                      :
                                     :
                  Defendants.        :     Venue is based upon plaintiff's
                                     :     residence, at 2786 Lindenmere
-------------------------------------------------X     Drive, Merrick, NY 11566

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action

and to serve a copy of your answer on the plaintiff's undersigned attorneys within twenty (20)

days after the service of this summons, exclusive of the day of service (or if this Summons is not

personally delivered to you within the State of New York, then within thirty (30) days after

service is complete).

     This action is brought to enforce certain contracts relating to the application for and

ownership of a certain retail automobile dealership, with related causes of action including

breach of fiduciary duty, unjust enrichment and a demand for an accounting.

     **PLEASE TAKE FURTHER NOTICE**, that in case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Carle Place, New York
     June 20, 2011

                                            LAW OFFICE OF STEVEN COHN, P.C.

**TO:**   **MR. MICHAEL SAPORITO**
       c/o Hamilton Honda
       655 US Hwy 130              By: _JEFFREY H. WEINBERGER_
       Hamilton, NJ 08691         JEFFREY H. WEINBERGER

      **MR. JESSE ARMSTEAD**        Attorneys for plaintiff Don Lia
       c/o Hamilton Honda          One Old Country Road, Suite 420
       655 US Hwy 130              Carle Place, NY 11514
       Hamilton, NJ 08691         (516) 294-6410

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------X
DON LIA, MOBILE MANAGEMENT,               :
LLC and N.R. AUTOMOTIVE, INC.,            :      Index No. 9698/11
                                          :
          Plaintiffs,                     :
                                          :
     -- against --                        :
                                          :      **VERIFIED COMPLAINT**
MICHAEL SAPORITO and                      :
JESSE ARMSTEAD,                           :
                                          :
          Defendants.                     :
-------------------------------------------------------X

**PLAINTIFFS DON LIA, MOBILE MANAGEMENT, LLC AND N.R.**

**AUTOMOTIVE, INC.,** by their undersigned attorneys, as and for their Verified Complaint

allege as follows:

**Parties and jurisdiction:**

    1.  Plaintiff Don Lia ("Lia") is a citizen of New York State and resident of Nassau

County. Lia is also the sole principal of plaintiff N.R. Automotive, Inc., and the Managing

Member of plaintiff Mobile Management, LLC.

    2.  Plaintiff Mobile Management, LLC is a New York limited liability company.

    3.  Plaintiff N.R. Automotive, Inc. is a New York corporation.

    4.  Upon information and belief, defendant Michael Saporito ("Saporito") is a resident

of New Jersey.

    5.  Upon information and belief, defendant Jesse Armstead ("Armstead") is a

resident of Texas, with a part-time residence in New Jersey.

    6.  Personal jurisdiction over Saporito is premised on his substantial contacts with New

York State regarding the transactions giving rise to this action, including: (i) his residence in

1

Suffolk County at the time of those transactions; (ii) his having executed the subject contracts in New York State under oath, before a New York notary public; and (iii) his having worked in Lia's employ in New York State from February 2000 through January, 2007, while the subject contracts were written and executed and during which most of his actionable conduct took place.

7.   Personal jurisdiction over Armstead is premised on his substantial contacts with New York State regarding the transactions giving rise to this action, including his having entered New York State to execute one of the subject contracts, under oath, before a New York notary public; and (ii) his having repeatedly entered New York State to participate in meetings with Lia and defendant Saporito concerning the transactions and events described below.

**Background:**

8.   Lia has worked in the automobile industry more than for 35 years, most of which have been as a dealer for American Honda Motor Co., Inc. ("AHMC"). He owns multiple retail automobile dealerships, all of which are managed by Mobile Management, LLC.

9.   Lia hired Saporito in February 2000 as the General Manager of his dealership in Huntington, New York ("Huntington Honda"). Saporito worked in increasingly prominent roles for Huntington Honda and Lia's other dealerships, until his employment was terminated on January 31, 2007 under the circumstances giving rise to this action.

10. During that time, Lia mentored Saporito in many aspects of the automobile and real estate businesses, working closely with him on a daily basis and entrusting him with the management of his dealership operations and various aspects of his real estate portfolio. The following is the story of Saporito's betrayal of that trust in violation of his contractual and fiduciary obligations, while using millions of dollars of Lia's money, all with the active assistance and participation of Armstead.

**The Hamilton Honda dealership:**

11. On May 19, 2009, Saporito and Armstead, as dealer-principals, opened a 65,000 square-foot Honda automobile dealership on a 12-acre campus in Hamilton, New Jersey ("Hamilton Honda").  Hamilton Honda's website identifies Saporito as its founder and co-owner, together with "former NFL pro-bowler and partner" Jesse Armstead.  The website also boasts that "after only one year in business, Hamilton Honda sky-rocketed into the top 10 Honda retailers in the world," having achieved "more than $150 million in sales revenue."

12. What Hamilton Honda's website does *not* say is that Saporito and Armstead only achieved this celebrated success with the financial backing of – and on the back of – Don Lia.

13. It was Lia who invested in excess of $10 million to purchase Hamilton Honda's underlying real estate and other assets and to fund its development costs and operating expenses (together, the "Project") – not Saporito and not Armstead.  It was Lia who groomed Saporito as an executive throughout his employment.  And it is Lia who is recognized by Saporito and Armstead in binding contracts as the owner of 75% of Hamilton Honda and 100% of its underlying real estate, with sole responsibility for the Dealership's management and operations.

14. Saporito and Armstead have since frozen Lia out of Hamilton Honda in breach of their contractual and fiduciary obligations, depriving Lia of participation in its "sky-rocketing" growth and withholding his rightful distributions, with millions of dollars invested currently unpaid and with no managerial control.  In the process, Saporito and Armstead misrepresented certifications to AHMC regarding their source of funds and working capital requirements for the Project.  They also misled American Honda Finance Corporation ("AHFC") -- which lent them approximately $40 million, including a mortgage on the real property and improvements for the Hamilton Honda site -- without disclosing that it was Lia who had paid for that property.

3

**The Hamilton Honda Open Point:**

15. In March 2003, AHMC announced that it was accepting applications for what is known in the automobile industry as an "open point" (i.e., the formation of a new automobile dealership in a specific geographic region) in central New Jersey (the "Open Point").

16. Lia and Saporito decided to pursue the Open Point, with the participation of Armstead, who they believed would enhance their chances of being awarded the Open Point through his high-profile status as a professional football star.

17. Saporito and Armstead applied to AHMC for the Open Point in their names. On the Source of Funds and Pro Forma statements that were part of their written application, Saporito and Armstead represented to AHMC that they, personally, were providing all of the funds necessary to complete the dealership project and meet AHMC's working capital requirements. However, it was Lia alone who contributed 100% of the funding for the dealership that ultimately became Hamilton Honda – not Saporito and not Armstead.

**The 2003 Agreement:**

18. On April 22, 2003, Lia, Saporito and Armstead executed a contract to govern their corporate and financial relationships with each other in connection with the prospective Honda dealership and real property that eventually became Hamilton Honda (the "2003 Agreement"). The 2003 Agreement was executed by all three parties under oath, before a New York notary public, and stated their intent to be bound by its terms and conditions.

19. Under the 2003 Agreement, Saporito and Armstead would apply for the Open Point in their names, with Armstead initially to own 51% of the prospective dealership as the "Dealer," and Saporito to own 49% as the "Dealer Manager."

20. The 2003 Agreement further provided that Lia would: (i) contribute 100% of the new

4

dealership's "total required capital investment," to be repaid under a three-year, self-liquidating prime rate note, (ii) purchase the real property on which the dealership would operate, (iii) build an automobile sales/service facility conforming to AHMC's requirements and specifications, and (iv) make "all [of the Dealership's] management decisions."

21.  The 2003 Agreement further provided that Lia would be entitled to require on demand that Saporito and Armstead transfer to him 75% of their combined ownership interests in the Dealership, and that the outcome of such transfers would be that Lia "shall thereafter be recognized by AHMC as the owner of 75% of the [D]ealership," with Armstead's and Saporito's interests reduced to 20% and 5%, respectively.

22.  The 2003 Agreement further required that upon AHMC's issuance of a Letter of Intent ("LOI") awarding the Open Point, Saporito and Armstead "[would] execute additional formal agreements that incorporate the [foregoing] terms and conditions."

23.  As set forth below, AHMC did issue an LOI to Saporito and Armstead awarding them the Open Point, in September 2004.  This triggered Saporito's and Armstead's obligations under the 2003 Agreement to "execute [the] additional formal agreements" referenced above, confirming Lia's capital contributions, equity interests and managerial responsibility.

24. However, Saporito and Armstead failed and refused to execute the formal agreements required under the 2003 Agreement despite repeated requests, even while they were still collecting funds from Lia each month toward the Project's development costs and expenses.

**The East Windsor Property:**

25. In 2003, in compliance with AHMC's property requirements for the Open Point, Lia purchased  approximately eight acres of real property located in East Windsor, New Jersey for $970,000 in the name of "Allstar Route 130 EW, LLC" (the "East Windsor Property").

All funds for that property were contributed solely by Lia, none by Saporito or Armstead.

26. AHMC ultimately deemed the East Windsor Property unsuitable for the Open Point. Lia, having already paid for that property to use as an automobile dealership, was compelled to invest more funds toward redeveloping it for an alternative use. That additional investment included approximately $670,000 to purchase a liquor license that would enhance the East Windsor Property's development and marketability (the "EW Liquor License").

**(ii) the Hamilton Property and related assets:**

27. In continuing pursuit of the Open Point, Lia purchased approximately eleven acres of real property located at 655 Route 130 in Hamilton Township, New Jersey (the "Hamilton Property"), in the name of Allstar Route 130 HS, LLC, in September 2004. The purchase price of that property, on which Hamilton Honda was ultimately built, was $5.5 million, all of which was paid by Lia.

28. Lia also purchased contiguous real property (together, the "Hamilton Assets") in the names of the following limited liability companies ("LLCs"):

    (i)      four (4) parcels located at 3821, 3825, 3829 and 3833 Crosswicks-Hamilton Square Road, in the names of "1 Crosswicks Hamilton, LLC," "2 Crosswicks Hamilton, LLC," "3 Crosswicks Hamilton, LLC," and "4 Crosswicks Hamilton, LLC," respectively; and

    (ii)     a parcel located on Route 130 North (formerly known as "Frank's Nursery"), in the name of "DTL HS Holdings, LLC."

29. As with the Hamilton Property and the East Windsor Property, the Hamilton Assets were paid for solely by Lia pursuant to the 2003 Agreement, together with the LLCs' operating costs and expenses.

**<u>Freeze-out from Hamilton Honda</u>:**

30. In September 2004, AHMC issued an LOI, approving Saporito's and Armstead's application and awarding them the Open Point.

31. The LOI triggered Saporito's and Armstead's obligations under the 2003 Agreement "to execute additional formal agreements" incorporating the 2003 Agreement's terms and Conditions (as identified at Paragraphs 19-23 above).  However, despite Lia's repeated requests (directly and through counsel), Saporito and Armstead failed to execute the agreements.

32.  Further, unbeknownst to Lia, while Saporito's and Armstead's application for the Open Point was still pending, they had aligned themselves with an investor group that was pursuing Honda (and other) automobile dealerships in the New York Tri-State area.  When and if acquired, these dealerships would be direct competitors of: (i) Hamilton Honda, whose assets Lia had already paid for, (ii) Huntington Honda, the dealership at which Lia had originally hired Saporito in February 2000, and (iii) Lia's other dealerships, which Saporito was still managing at an executive salary.

33. Saporito's and Armstead's pursuit of potentially competing dealerships while still applying for the Open Point created a blatant conflict of interest.  They failed to disclose this conflict to Lia, at great risk to his multi-million dollar investment in the Project.  In addition, throughout that period Saporito continued to requisition millions of dollars from Lia for the Project's costs and development, while still on the payroll of Mobile Management, LLC.

34. Also unknown to Lia, Saporito and Armstead applied to AHFC for  approximately $40 million in land acquisition, construction and permanent financing, and floor plans for the Dealership.  As part of that financing, Saporito and Armstead executed loan documents in favor of AHFC for a mortgage of approximately $20 million on the Hamilton Property.  At no time did

Saporito or Armstead either disclose to AHFC that Lia had already paid for the Hamilton Property, or disburse any of the AHFC loan proceeds to Lia in repayment of that investment.

35. Additionally, Saporito improperly transferred a $1.9 mortgage that had been placed on the Dealership's property to the adjacent property owned by Lia personally formerly known as "Frank's Nursery" (Par. 28(ii) above). Upon information and belief, Saporito arranged this transfer while fully aware that he and Armstead had already taken steps to freeze Lia out of the Dealership and deprive him of his rightful equity interests. In the process, Saporito illicitly encumbered Lia's property.with $1.9 million in secured debt, while freeing the Dealership's real property from secured debt in that amount.

**The 2006 Agreement:**

36. In early November 2006, Lia learned of Saporito's and Armstead's pursuit of potentially competing dealerships with a separate investor-group. He immediately instructed his attorney to draft a letter for Saporito to sign (the "2006 Agreement"), reaffirming his and Armstead's obligations under the 2003 Agreement, and acknowledging that Lia had been the Project's sole source of funds. The 2006 Agreement provided in pertinent part (italics added):

> This letter confirms that I have, directly or indirectly, *exclusively funded the acquisition, operating and carrying costs of each of the transactions referred to [below]*. These payments have been made as capital contributions to the entities for the purposes of acquiring real estate, a liquor license(s), and to pay for all operating costs incurred by each entity. However, the Operating Agreements for the entities below do not accurately reflect our business agreement. *By your execution of this letter, you confirm and acknowledge that the Operating Agreements of the entities listed below shall be amended to acknowledge that I, Don Lia, am the sole member of the entities listed below.*

37. The 2006 Agreement concluded by requiring Saporito to amend the LLCs' operating agreements in order to memorialize Lia's equity interests and capital contributions.

This requirement was consistent with the 2003 Agreement which Saporito and Armstead had still not performed, and provided as follows (italics added):

> Upon my request, you agree to execute any amendments to the Operating Agreement in any of the above listed limited liability companies, *to confirm the ownership of the entities and assets thereof as outlined in this letter.* This letter acknowledges that you and I will commit to further negotiations to prepare appropriate instruments to memorialize our business agreements.

38. Saporito signed the 2006 Agreement on November 13, 2006, before a New York notary public.   Shortly thereafter, Lia's attorney forwarded the countersigned 2006 Agreement to Saporito's attorney, requesting that he draft the required agreements.  However, Saporito failed and refused to execute the necessary amendments to the LLCs' operating agreements, as required under the 2006 Agreement and originally required in the 2003 Agreement.

39.  Lia terminated Saporito's employment as of January 31, 2007.

40. In May 2009, Saporito and Armstead, with the approval of AHMC, opened Hamilton Honda.

41. Saporito and Armstead have frozen Lia out of Hamilton Honda, despite: (i) Lia's having invested millions of dollars toward the acquisition of its underlying real property and related assets, (ii) Lia's payment for all of its development costs, capitalization and operating expenses, and (iii) the 2003 Agreement's requirement that Lia be responsible for Hamilton Honda's managerial decisions.

42. Lia is still owed nearly all of his capital investment.  Despite repeated demands, he has realized none of the benefits of the Dealership's reported sales growth, and none of the 75% distributions to which he is contractually entitled.

## AS AND FOR A FIRST CAUSE OF ACTION,
## BY LIA AGAINST SAPORITO AND ARMSTEAD

(specific performance of the 2003 Agreement and the 2006 Agreement)

43. Lia incorporates by reference each and every allegation set forth in paragraphs 6-42 above, inclusive.

44. The 2003 Agreement is an enforceable, binding contract.

45. The 2006 Agreement is an enforceable, binding contract.

46. Lia has performed all of his obligations under the 2003 Agreement and the 2006 Agreement.

47. Saporito and Armstead have failed to perform their obligations under the 2003 Agreement, including the requirement that they execute additional agreements confirming Lia's capital investments and equity interests.

48. Further, Saporito has failed and refused under the 2006 Agreement to execute amendments to the Operating Agreements that would confirm that Lia contributed all funds used for acquisition of real property and payment of operating expenses relating to Hamilton Honda.

49. Lia has no adequate remedy at law.

50. Accordingly, Lia respectfully demands a judgment of specific performance, directing Saporito and Armstead to comply with the 2003 Agreement, and further directing Saporito to comply with the 2006 Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION,
## BY LIA AGAINST SAPORITO AND ARMSTEAD

(declaratory judgment)

51. Lia incorporates by reference each and every allegation set forth in paragraphs 6-42 and 44-50 above.

52. Despite Saporito's acknowledgment in the 2006 Agreement that Lia is the sole owner of the LLCs and their respective assets, consistent with the 2003 Agreement on which the 2006 Agreement is based, Saporito and Armstead have denied Lia's interests and equity in the Dealership, as specified therein.

53. By reason thereof, a justiciable controversy has arisen between Lia on the one hand, and Saporito and Armstead on the other hand. That controversy is ripe for adjudication.

54. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of the East Windsor Property.

55. Pursuant to CPLR 3001 and 3017, Lia further requests a declaration that he is the sole owner of the EW Liquor License.

56. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of the Hamilton Property.

57. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of the residential parcels located at 3821, 3825, 3829 and 3833 Crosswicks Hamilton Square Road, Hamilton, New Jersey.

58. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of the commercial real property located on Route 130 North in Hamilton Township, New Jersey and formerly known as "Frank's Nursery."

59. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of 1 Crosswicks Hamilton, LLC.

60. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of 2 Crosswicks Hamilton, LLC.

11

61. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of 3 Crosswicks Hamilton, LLC.

62. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of 4 Crosswicks Hamilton, LLC.

63. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of DTL HS Holdings LLC.

64. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is the sole owner of 633 Rte. 130 HS, LLC.

65. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is entitled to 75% of the profits, and full managerial control, of Hamilton Honda.

66. Pursuant to CPLR 3001 and 3017, Lia requests a declaration that he is a 75% owner of Hamilton Honda.

**AS AND FOR A THIRD CAUSE OF ACTION,
BY LIA AGAINST SAPORITO**

(breach of fiduciary duty)

67. Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 6-42, 44-50 and 52-66 above.

68. The professional relationship cultivated over seven years of working for Lia in positions of increasing trust and responsibility established in Saporito a fiduciary duty of loyalty to Lia with respect to the dealerships he was managing, the Project, and the AHMC franchise that ultimately became Hamilton Honda.

69. Through his conduct as set forth above, including his failure and refusal to perform under the 2003 and 2006 Agreements and retention of Lia's multi-million dollar capital investment in the Project, Saporito has breached his fiduciary obligations to Lia.

12

70. By reason thereof, Lia has been damaged to the extent of his unreturned capital contributions, and his rightful 75% share in the profits of Hamilton Honda since May 2009.

### AS AND FOR A FOURTH CAUSE OF ACTION, BY
### MOBILE MANAGEMENT, LLC, AGAINST SAPORITO

(breach of fiduciary duty)

71.  Plaintiff Mobile Management, LLC incorporates by reference each and every allegation set forth in paragraphs 6-42, 44-50, 52-66 and 68-70 above.

72.  As a highly compensated employee with supervisory and operational management responsibilities over multiple auto dealerships, Saporito owed a fiduciary duty of loyalty to Mobile Management LLC, the entity which paid his salary, benefits and bonuses during the period of wrongful conduct set forth above.

73.  Saporito's pursuit of other potentially competing dealerships while he was still receiving executive compensation from Mobile Management, LLC violated his fiduciary duty of loyalty.  As a result, Mobile Management, LLC has been damaged to the extent of all salary and bonuses paid to Sapoirito between January 2006 and his termination in January 2007, in an amount to be proven at trial but believed to exceed $500,000.

### AS AND FOR A FIFTH CAUSE OF ACTION,
### BY LIA AGAINST SAPORITO AND ARMSTEAD

(constructive trust)

74. Lia incorporates by reference each and every allegation set forth in paragraphs 6-42, 44-50, 52-66, 68-70 and 72-73 above.

75.  As alleged above, Saporito has violated his fiduciary obligations, both to Lia and to Mobile Management, LLC.

76. Further, Saporito and Armstead promised to treat Lia as an owner of not less than seventy-five percent (75%) of Hamilton Honda, in consideration of and in recognition of Lia's contributing 100% of the dealership's capital and land acquisition costs, and operating expenses.

77. In reliance upon Saporito's and Armstead's promises under the 2003 Agreement, and Saporito's promises in the 2006 Agreement, and further in the expectation that Saporito was honoring his fiduciary responsibilities, Lia invested millions of dollars in the East Windsor Property, the EW Liquor License, the Hamilton Property, the Hamilton Assets, and the LLCs.

78. More than $9 million of Lia's investment remains unpaid, despite the "sky-rocketing" growth claimed on Hamilton Honda's website, as described above.

79. Saporito and Armstead have accepted the benefits of Lia's capital contributions and enjoyed the fruits of Hamilton Honda's success in an amount to be proven at trial, but have effectively frozen him out, withheld his contractual distributions and failed to repay his capital investment. They have been unjustly enriched to that extent, at Lia's expense.

80. Upon information and belief, Saporito and Armstead are leveraging the fruits of their unlawful conduct by forming alliances with other professional athletes and their business managers, in pursuit of new retail automotive industry assets beyond Hamilton Honda. Such assets are believed to include new vehicle franchises in the New York Tri-State area, and open points and existing dealerships of Honda and other automobile manufacturers across the Eastern Seaboard.

81. Further upon information and belief, defendants' pursuit of such assets in the names of celebrity football players such as New York Giants star Antonio Pierce rather than Armstead himself is a sham, intended to further enrich them by violating the 2003 Agreement in another way: by avoiding its restriction that if Armstead acquires a financial interest in any other

14

automobile franchise dealership without Lia's prior written consent, he must sell his entire interest in Hamilton Honda to Lia on the buyout terms prescribed therein.

82. By reason thereof, Lia respectfully demands judgment that a constructive trust be imposed on the Hamilton Property, the Hamilton Assets, the EW Liquor License, any assets of the LLCs, and the revenues of Hamilton Honda, pending repayment of his capital contributions.

## AS AND FOR A SIXTH CAUSE OF ACTION, BY LIA AGAINST SAPORITO AND ARMSTEAD

(unjust enrichment)

83. Lia incorporates by reference each and every allegation set forth in paragraphs 6-42, 44-50, 52-66, 68-70, 72-73 and 75-82 above.

84. By reason of their conduct as set forth above, Saporito and Armstead have been unjustly enriched in an amount to be proven at trial. That amount is believed to include the value of Lia's capital investment in the Project which ultimately became Hamilton Honda, and all profits and distributions of Hamilton Honda that have been wrongfully withheld from him.

85. Further, Saporito and Armstead were not willing or able to invest their own funds in the Project, as set forth above. Without the benefit of Lia's capital investment, they would not have been able to apply for the Open Point, and then to form Hamilton Honda after AHMC issued the LOI. Accordingly, Saporito and Armstead have also been unjustly enriched by the value of the entire Dealership, in an amount to be proven at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION, BY LIA AGAINST SAPORITO AND ARMSTEAD

(accounting)

86. Lia incorporates by reference each and every allegation set forth in paragraphs 6-42, 44-50, 52-66, 68-70, 72-73, 75-82 and 84-85 above.

15

87.  Although Saporito has made certain payments in partial performance of the 2003 Agreement, he and Armstead have failed and refused to make the 75% distributions to Lia that are prescribed in the 2003 Agreement and incorporated by reference in the 2006 Agreement.

88.  By reason thereof, Lia is entitled to an accounting of Hamilton Honda's revenues and expenses since its formation in 2009, and to the right to inspect its books and records.

## AS AND FOR AN EIGHTH CAUSE OF ACTION, BY N.R. AUTOMOTIVE, INC. AGAINST SAPORITO

(breach of contract)

89.  Plaintiff N.R. Automotive, Inc. incorporates by reference each and every allegation set forth in paragraphs 6-42, 44-50, 52-66, 68-70, 72-73, 75-82, 84-85 and 87-88 above.

90. In October, 2002, Saporito requested Lia's financial assistance with his purchase of a new home in Melville, New York.

91. In response to Saporito's request, Lia arranged for an interest-free loan to Saporito in the amount of $300,000.  That loan was memorialized in a demand note from N.R. Automotive, Inc. dated October 31, 2002 (the "Note").

92. On or about December 22, 2008, Saporito made a payment on the Note of $25,000, leaving a balance due of $275,000.

93. By reason thereof, Saporito owes N.R. Automotive, Inc. $275,000.

**WHEREFORE,** plaintiffs respectfully demand judgment as follows:

(i)     on the First Cause of Action, by Lia against Saporito and Armstead, specific performance of the 2003 Agreement and the 2006 Agreement, directing Saporito and Armstead to issue all amendments necessary to memorialize Lia's status as the sole member of the LLCs and sole funding source of the assets identified above;

16

     (ii)      on the Second Cause of Action, by Lia against Saporito and Armstead, judicial declarations pursuant to CPLR 3001 and 3017 that:

       i.   he is the sole owner of the East Windsor Property;

      ii.   he is the sole owner of the EW Liquor License;

     iii.   he is the sole owner of the Hamilton Property;

     iv.   he is the sole owner of the residential parcels located at 3821, 3825, 3829 and 3833 Crosswicks Hamilton Square Road, Hamilton, New Jersey;

      v.   he is the sole owner of the commercial real property located on Route 130 North in Hamilton Township, New Jersey and formerly known as "Frank's Nursery;"

     vi.   he is the sole owner of 1 Crosswicks Hamilton, LLC;

    vii.   he is the sole owner of 2 Crosswicks Hamilton, LLC;

   viii.   he is the sole owner of 3 Crosswicks Hamilton, LLC;

     ix.   he is the sole owner of 4 Crosswicks Hamilton, LLC;

      x.   he is the sole owner of DTL HS Holdings LLC;

     xi.   he is the sole owner of 633 Rte. 130 HS, LLC;

    xii.   he is entitled to 75% of the profits, and full managerial control, of Hamilton Honda; and

   xiii.   he is a 75% owner of Hamilton Honda;

    (iii)     on the Third Cause of Action, by Lia against Saporito, damages in an amount to be proven at trial but believed to exceed $9.0 million;

    (iv)     on the Fourth Cause of Action, by Mobile Management, LLC against Saporito,

damages in an amount to be proven at trial but believed to exceed $500,000;

(v)     on the Fifth Cause of Action, by Lia against Saporito and Armstead, the
        imposition of a constructive trust over the East Windsor Property, the EW
        Liquor License, the Hamilton Property, the Hamilton Assets, any assets belong
        to the LLCs, and the revenues of Hamilton Honda;

(vi)    on the Sixth Cause of Action, by Lia against Saporito and Armstead, damages
        in an amount to be proven at trial but believed to exceed $9 million;

(vii)   on the Seventh Cause of Action, by Lia against Saporito and Armstead, an
        accounting of Hamilton Honda's revenues and expenses since its formation in
        May 2009, with the right to inspect its books and records; and

(viii)  on the Eighth Cause of Action, by plaintiff N.R. Automotive, Inc. against
        Saporito, judgment in the amount of $275,000;

together with such other and further relief as the Court shall deem just and proper.

Dated:  Carle Place, New York
        June 20, 2011

                                THE LAW OFFICE OF STEVEN COHN, P.C.
                                Attorneys for Plaintiffs

                        By: _____
                                STEVEN COHN


                                One Old Country Road, Suite #420
                                Carle Place, NY 11514
                                (516) 294-6410

18

## VERIFICATION

**DON LIA,** being duly sworn, deposes and says:

1.  I am the individual plaintiff in this lawsuit, and a principal in plaintiffs N.R. Automotive, Inc. and Mobile Management, LLC.

2.  I have reviewed the foregoing Complaint, am familiar with its allegations, and believe those allegations to be true, except for matters alleged upon information and belief, and as to those matters I believe them to be true.  The basis for my belief in the accuracy of this pleading is personal knowledge.

**DON LIA**

Sworn to before me this
____ day of June, 2011

_____
Notary Public

KATHLEEN M. WARD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01WA5011115
Qualified in Suffolk County
My Commission Expires April 12, 2015

19

*Index No.*        *Year 20*    **11**

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU**

**DON LIA, MOBILE MANAGEMENT, LLC and N.R. AUTOMOTIVE, INC.,**

*Plaintiffs,*

-against-

**MICHAEL SAPORITO and JESSE ARMSTEAD,**

*Defendants.*

**SUMMONS AND VERIFIED COMPLAINT**

**STEVEN COHN, P.C.**

*Attorneys for*

**Plaintiffs**

SUITE 420
ONE OLD COUNTRY ROAD
CARLE PLACE, NEW YORK 11514
(516) 294-6410
FAX: (516) 294-0094

*To:*

*Attorney(s) for*

*Service of a copy of the within*                            *is hereby admitted.*

*Dated:*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ **NOTICE OF ENTRY**
*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*        20

☐ **NOTICE OF SETTLEMENT**
*that an Order of which the within is a true copy will be presented for settlement to the Hon.*
*one of the  judges of the within named Court,*
*at*
*on*           20     , *at*          *M.*

Check Applicable Box

*Dated:*

**STEVEN COHN, P.C.**

*Attorneys for*

SUITE 420
ONE OLD COUNTRY ROAD
CARLE PLACE, NEW YORK 11514

*To:*