UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
DON LIA, MOBILE MANAGEMENT,          :
LLC and N.R. AUTOMOTIVE, INC.,       :
                                     :           Case No. 11-CV-3621 (SJF) (ETB)
          Plaintiffs,                :
                                     :
     -- against --                   :
                                     :
MICHAEL SAPORITO and                 :
JESSE ARMSTEAD,                      :
                                     :
          Defendants.                :
----------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTIONS OF DEFENDANTS
<u>MICHAEL SAPORITO AND JESSE ARMSTEAD</u>**


**STEVEN COHN, P.C.**
Attorneys for plaintiffs
One Old Country Road, Suite 420
Carle Place, NY 11514
(516) 294-6410

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................iii

PRELIMINARY STATEMENT .........................................................................1

ARGUMENT...............................................................................................3

    I.     DEFENDANTS HAVE EXCEEDED THE STANDARDS
          FOR A MOTION TO DISMISS ON THE PLEADINGS........................3

    II.    PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED...........................6

         A.     Breach/specific performance of 2003 Agreement.....................6

                1. Defendants' breach of the 2003 Agreement was ongoing.........8

                2. The 2006 Agreement re-starts the limitations
                Period as to both defendants, not only Saporito......................9

         B.     Unjust enrichment.................................................11

         C.     Constructive trust, fiduciary duty and accounting...................12

         D.     Declaratory judgment.............................................13

    III.   LIA IS NOT JUDICIALLY ESTOPPED
          FROM PROSECUTING THIS ACTION......................................14

    IV.   THE UNCLEAN HANDS DOCTRINE DOES NOT
          BAR LIA'S CLAIMS FOR EQUITABLE RELIEF ............................16

    V.    PLAINTIFFS STATE A CLAIM FOR SPECIFIC PERFORMANCE
          PERFORMANCE OF THE 2003 AND 2006 AGREEMENTS...............18

         A.     The 2003 Agreement did reflect a meeting
              of the minds on essential terms....................................19

         B.     The Complaint properly pleads full performance by Lia............21

         C.     The 2006 Agreement states a claim, and
              is susceptible to specific performance...........................22

**Page**

VI.        PLAINTIFFS STATE A CLAIM FOR BREACH
OF FIDUCIARY DUTY AGAINST SAPORITO..........................23

THE COMPLAINT STATES CLAIMS FOR UNJUST
ENRICHMENT AND CONSTRUCTIVE TRUST........................24

    A.  Unjust enrichment...................................................................24

    B.  Constructive trust....................................................................25

CONCLUSION...............................................................................26

## TABLE OF AUTHORITIES

**Page**

**Cases:**

*American Mfrs. Mutual Ins. Co. v. Payton Lane Nursing Home*,
2010 WL 652832 (E.D.N.Y.)..............................................................................15-16

*Aramony v. United Way of America*, 1998 WL 205331 (S.D.N.Y. 1998)..........................22

*Beacher v. Estate of Beacher*, 756 F.Supp.2d 254 (E.D.N.Y. 2010)................................16

*BeautyBank, Inc. v. Harvey Prince LLP*, 2011 WL 4352639 (S.D.N.Y.) ..........................15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................3

*Berman v. Sugo LLC*, 580 F.Supp.2d 191 (S.D.N.Y. 2008)...........................................22

*Bodden v. Kean*, 86 A.D.3d 524, 526 (2d Dep't 2011)..................................................24

*Broadcast Music, Inc. v. Hearst/ ABC Viacom Entertainment Services*,
746 F.Supp. 320 (S.D.N.Y. 1990) ...............................................................................16

*Carvel v. Franchise Stores Realty Corp.* 2009 WL 4333652 (S.D.N.Y.) ...........................9

*Dillon v. Dean*, 158 A.D.2d 579 (2d Dep't 1990)..........................................................17

*Ellul v. Congregation of Christian Bros.*, 2011 WL 1085325 *4 (S.D.N.Y.).....................12

*Empire City Capital Corp. v. Citibank, N.A.*,
2011 WL 4484453 (S.D.N.Y.).....................................................................................3

*Friedman v. Miale*, 69 A.D.3d 789 (2d Dep't 2010)......................................................26

*Global Network Communications, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)......................................................................................4-5

*Golden Pac. Bankcorp v. F.D.I.C.*, 273 F.2d 509, 520 (2d Cir. 2001)...............................11

*Guilbert v. Gardner*,  480 F.3d 140 (2d Cir. 2007)..............................................6, 9-10

*Horton v. Nationwide Recovery Systems, Inc.*, 2006 WL 2844265 (E.D.N.Y.)....................3

**Page**

*Iannuzzi v. Washington Mut. Bank*, 2008 WL 3978189 (E.D.N.Y.)………………………………....5

*In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011)……………………………………14

*In re CCT Communications, Inc.,* 420 B.R. 160 (Bkrtcy. S.D.N.Y. 2009)………………………...15

*Intellivision v. Microsoft Corp.*, 784 F.Supp.2d 356 (S.D.N.Y. 2011)……………………………14

*Itakura v. Primavera Galleries Inc.*, 2009 WL 1873530 (S.D.N.Y.)……………………………11

*Jane Doe v. Deer Mountain Day Camp, Inc.,* 682 F.Supp.2d 324 (S.D.N.Y. 2010)……………16

*Johnson v. Levy*, 2011 WL 4375671 (E.D.N.Y. Sept. 17, 2011)………………………………4-5

*Kermanshah v. Kermanshah*, 580 F.Supp.2d 247 (S.D.N.Y. 2008)……………………7-9, 11-13

*Kreuter v. Tsucalas*, 287 A.D.2d 50, 54 (2d Dep't 2001)…………………………………………21

*Kuar v. Mawn*, 2011 WL 838911 (E.D.N.Y.)…………………………………………………...14, 16

*Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 797 (3d Dep't 1999)……..23

*Lew Morris Demolition Co., Inc. v. Board of Ed. of City of New York*,
40 N.Y.2d 516 (1976)……………………………………………………………………9-10

*Martha Graham School and Dance Foundation, Inc. v. Martha Graham
Center of Contemporary Dance, Inc.,* 153 F.Supp.2d 512 (S.D.N.Y. 2001)……………22

*Mastercard Intern. Inc. v. First Nat. Bank of Omaha, Inc.,*
2004 WL 326708 (S.D.N.Y.) …………………………………………………………17

*Porrazzo v. Bumble Bee Foods, LLC*, 2011 WL 4552306 (S.D.N.Y.)…………………………...5

*Pro Bono Investments, Inc. v. Gerry*, 2005 WL 2429777 (S.D.N.Y.)…………………………...17

*Ross v. Thomas*, 2010 WL 3952903 *5……………………………………………………………11

*S.E.C. v. Eberhard*, 2006 WL 17640 (S.D.N.Y.)………………………………………………...16

*Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976)……………………………..…………………24

*Source Search Technologies, LLC v. LendingTree, LLC*,
588 F.3d 1063 (C.A. Fed. 2009)………………………………………………………14

**Page**

*Sriraman v. Patel,*
    761 F.Supp.2d 7 (E.D.N.Y. 2003)…………………………………………………12

*Stewart Title Ins. Co. v. Liberty Title Agency, LLC,*
83 A.D.3d 532 (1ˢᵗ Dep't 2011)……………………………………………………22

*Teutel v . Teutel,* 79 A.D.3d 851 (2d Dep't 2010)……………………………….. …..18

*Tierney v. Omnicom Group Inc.,* 2007 WL 2012412 (S.D.N.Y.)…………………………….. 5

*Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138 (2d Cir. 2005)………………………....15

*Wecare Holdings, LLC v. Bedminster Intern. Ltd.,*
2009 WL 604877 (W.D.N.Y.)…………………………………………………...17

*Yan's Video, Inc. V Hong Kong Tv Video Programs, Inc.,*
133 A.D.2d 575 (1ˢᵗ Dep't 1987)…………………………………...………18

*Zane v. Minion,* 63 A.D.3d 1151 (2d Dep't 2009)……………………………………... 12

**Statutes:**

Fed. R. Civ. P. 12(b)(6)……………………………………………....1-5

N.Y. C.P.L.R. § 213(2)………………………………………………... 6

42 U.S.C. § 1437 *et seq.* (United States Housing Act of 1937)………………………… 20

## PRELIMINARY STATEMENT

Plaintiffs Don Lia ("Lia"), Mobile Management, LLC, and N.R. Automotive, Inc. respectfully submit this Memorandum in opposition to the motions of defendants Michael Saporito and Jesse Armstead for dismissal of their Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As both defendants make essentially the same arguments (statute of limitations, unclean hands, judicial estoppel, failure to state a claim), the following is submitted in combined opposition to both motions, in the interest of judicial economy.[1]

Both motions should be denied.  Both rest primarily on two false premises, one with respect to statutes of limitations, and the other concerning judicial estoppel and unclean hands.

As for the various statutes of limitations, the premise is that defendants' actionable conduct accrued as of September 2004, when American Honda Motor Co., Inc. ("American Honda")  issued a Letter of Intent awarding them the right to own and operate what ultimately became "Hamilton Honda," the automobile dealership which is the subject of this action. The flaw in this premise is its deceptive reading of Paragraph 23 of the Complaint, which alleges that issuance of the Letter of Intent "triggered" defendants' contractual obligations. However, merely because the triggering event occurred in September 2004 does not mean that plaintiffs' claims actually *accrued* at that time for purposes of a statute of limitations analysis (pp. 6-7 below).

As for judicial estoppel and unclean hands, the flaw in defendants'  premise is that Lia's 2005 non-party deposition testimony in an administrative proceeding not mentioned anywhere in the Complaint is appropriate extrinsic "evidence" on a Rule 12(b)(6) pleadings motion. Saporito

---

[1]  Copies of the Complaint, the 2003 Agreement and the 2006 Agreement appear as Exhibits A, E and F, respectively to the Declaration of Saporito's counsel Rick Ostrove ("Ostrove Decl.") and Exhibits B, C and D to Declaration of Armstead's counsel Andres Cooper ("Cooper Decl.").   Those documents are not re-submitted with this brief. They are referenced in context below as exhibits to Mr. Ostrove's. All terms defined in the Complaint (i.e., "Hamilton Honda," the "2003 and 2006 Agreements," the "Open Point," the "LLCs," etc.) are incorporated by reference.

1

argues that the transcript is fair game because it is susceptible to judicial notice (Saporito Memo, p. 7); Armstead raises the same proposition without citation to any authority. Both this Court and the Second Circuit, however, say that they are mistaken (pp. 4-5 below).[2]

Defendants' self-righteous character assassination in the guise of unclean hands and judicial estoppel should be disregarded. Not only is the Willis Protest improperly before the Court as a matter of law, if either defendant chooses to raise it again in this action his own testimony from that hearing will be even more problematic to them. As it is, defendants have already demonstrated their readiness to lie under oath as to their source of funds in applying to American Honda for the Open Point (Complaint, ¶¶ 14-17). Since plaintiffs' allegations on that (and all other issues) are presumed true, defendants should be less concerned with casting stones and more worried about keeping their own glass houses in order.

Plaintiff's eight causes of action all state viable claims for relief, and none is time-barred. Upon the following authorities, both motions should be denied, and defendants required to answer the Complaint without further delay.

---

[2]   The proceeding to which defendants refer was a protest to the New Jersey Motor Vehicle Franchise Committee by the owners of "Willis Honda," the Honda dealership closest to Hamilton Township (the "Willis Protest"). According to defendants (whose allegations are not presumed true for purposes of this motion), the Willis Protest alleged in part that because Lia had an undisclosed interest in the Project that became Hamilton Honda, the Open Point should not be awarded to Saporito and Armstead. Plaintiffs are addressing the Willis Protest below only to the extent they must respond to defendants' arguments. However, plaintiffs in no way acknowledge that the Willis Protest is either probative of their claims, or appropriate to be raised on a Rule 12(b)(6) motion against a pleading which does not even mention it.

## ARGUMENT

I. **DEFENDANTS HAVE EXCEEDED THE STANDARDS FOR A MOTION TO DISMISS ON THE PLEADINGS.**

By moving under Federal Rule 12(b)(b), defendants are challenging the sufficiency of Lia's Complaint as a matter of pleading.  They are not seeking judgment on the pleadings under Rule 12(c), and have not asked the Court to convert their motions into applications for summary judgment.  "The purpose of Rule 12(b)(6) is to test ... the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). "At this stage of the proceedings, [the Court's] charge is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Horton v. Nationwide Recovery Systems, Inc.*, 2006 WL 2844265 *1 (E.D.N.Y.)

The pertinent inquiry is thus not whether Lia's testimony in this case will be credible, or whether his testimony in the 2005 administrative hearing was truthful.  It is not which party's hands are dirtier.  Those questions are for another time -- if ever, since the ALJ's factual findings in that hearing have no probative value as to Lia's dispute with Saporito or Armstead.

Rather, the correct inquiry is: (i) whether Lia's eight causes of action properly allege all of their predicate elements (*Horton, at* *1 ("complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory'")); and (ii) if the facts alleged "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Empire City Capital Corp. v. Citibank, N.A.*, 2011 WL 4484453 *2 (S.D.N.Y.), *citing Twombly*, 550 U.S. at 563.

3

Six weeks ago, this Court (Spatt, J.) refused to consider a plaintiff's deposition from a prior action not mentioned in his complaint in denying on a Rule 12(b)(6) motion to dismiss, in *Johnson v. Levy*, 2011 WL 4375671 (E.D.N.Y. Sept. 17, 2011). The *Johnson* court rejected the defense argument (echoed here), that it could take judicial notice of the transcript from that deposition (*See* Saporito Memo, p. 7). It also rejected the notion that the plaintiff's prior testimony was more reliable than the allegations of his complaint, because he had testified under oath and cross-examination in the previous case. Its analysis is directly on point:

> With regard to the deposition transcripts, the Defendants make a number of arguments for their admissibility, none of which are compelling. First, [they] contend that because the Johnsons were deposed under oath, subject to cross-examination ... the Court can consider the statements in their depositions as admissions. However, all of the cases cited by the Defendants for this proposition ... are distinguishable because they involved the admissibility of prior testimony at trial, *not on a motion to dismiss*.

> Defendants also argue that the Court can take judicial notice of the deposition transcripts as part of the public record in the [previous action] ... [and] constitute verified and sworn testimony, which is more reliable than the facts in an unverified initial complaint ...

> ... The argument that a court can rely on previous testimony on a motion to dismiss for the purpose of contradicting facts asserted in the complaint was explicitly rejected by the Second Circuit in *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006). In *Global Network*, the court reversed a district court's dismissal of a complaint for failure to state a claim because the court relied in part on the testimony of the plaintiff's sole shareholder and president in an unrelated criminal proceeding. The Second Circuit found this to be reversible error because "not only did the district court consider external material in its ruling, it relied on those materials to make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint" [emphasis in original]. Thus, not only would it be reversible error for the Court to consider the deposition transcripts for the truth of the matter asserted, but it would be improper for the Court on a motion to dismiss to accept the statements in the deposition transcripts over the facts asserted in the complaint.

*Johnson*, 2011 WL 4375671 at \*5-7 (emphasis added), *citing Global Network Communications* (p. 3 above)*, 458 F.3d at 156. *Accord, Iannuzzi v. Washington Mut. Bank*, 2008 WL 3978189 \*6 (E.D.N.Y.) (deposition transcript outside the pleadings should not be considered on Rule 12(c) motion); *Tierney v. Omnicom Group Inc.*, 2007 WL 2012412 \*4 (S.D.N.Y.) "Prior inconsistent statements, while material to credibility, are not the proper subject matter of judicial notice").

 *Johnson, Global Network, Iannuzzi* and *Tierney* are dispositive of any argument on these motions that invokes Lia's testimony in the Willis Protest.  All excerpts from that testimony, and the findings of the New Jersey Motor Vehicle Franchise Committee, are outside the four corners of this Complaint and therefore improperly brought before the Court.

 Furthermore, where a document on which a complaint is silent is offered as grounds for dismissal on a motion under Rule 12(b)(6), two more requirements must be met:  (1) "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and (2) "[i]t must also be clear that there exist no material disputed issues of fact regarding the *relevance* of the document."  *Porrazzo v. Bumble Bee Foods, LLC*, Slip Copy, 2011 WL 4552306 \*2 (S.D.N.Y.) (emphasis added).

 Plaintiffs obviously dispute the relevance of these documents to these motions, making them improper under *Porrazzo* in addition to *Johnson, Global Network, Iannuzzi* and *Tierney*. Accordingly, defendants' arguments for judicial estoppel, unclean hands and illegality are not properly before the Court.   That said, those arguments are further addressed below.

## II. **PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED**.

Saporito and Armstead both contend that all of plaintiffs' claims are barred under their respective statutes of limitation.  Their arguments as to each claim are addressed below.

### A. **Breach/specific performance of the 2003 Agreement:**

Defendants argue that plaintiffs' First Cause of Action on the 2003 Agreement accrued as of September 2004, based on plaintiffs' allegation that their obligations were "triggered" when Honda issued its Letter of Intent (Saporito Memo at pp. 9, 11 and Armstead Memo at p. 13, both *citing* Complaint at ¶ 23).  Under their view, the clock started ticking in September 2004, leaving plaintiffs out of time as of September 2010 under New York's six-year statute of limitations (Saporito Memo at pp. 10-11 and Armstead Memo at p. 13, *citing* N.Y. C.P.L.R. § 213(2)).

This argument depends on two mis-readings of the Complaint.  First, by focusing only on the allegation that their obligations were "triggered" in September 2004 (Complaint, ¶ 23), defendants would freeze-frame their breach as of that month.  In fact, the breach was *ongoing*, restarting the clock every time they refused Lia's demands for performance while concealing their intent to *never* perform.  "[Where] a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Guilbert v. Gardner*, 480 F.3d 140, 149-50 (2d Cir. 2007).

Second, defendants overlook the 2006 Agreement, which incorporated the "business arrangement" set forth in the 2003 Agreement by reference.  The 2006 Agreement was a promise by Saporito to perform his and Armstead's outstanding obligations from the 2003 Agreement.  It meets the Second Circuit's requirement that "an acknowledgment or promise to perform a previously defaulted contract must be in writing to re-start the statute of limitations." *Guilbert*, 480 F.3d at 149.  The six-year limitations period therefore re-started as of November 10, 2006,

even if one were to disregard the ongoing nature of defendants' breach.

With respect to defendants' ongoing breach, *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247 (S.D.N.Y. 2008) is on point. As here, plaintiff in *Kermanshah* was frozen out of a closely held business in which he had invested, and denied his rightful distributions. As here, his claims included breach of contract, unjust enrichment, declaratory judgment, breach of fiduciary duty and an accounting. The contract claim was described as follows:

> [Plaintiff] asserts a breach of contract claim, claiming that defendants breached written and oral agreements by not "shar[ing] equally in the corporate opportunities, investments, and businesses," by not providing [him] with any information relating to [his] investments in the businesses, by "forging [[his] name on certain transfer documents," by "failing to include [[his] name and ownership interests" in documents created to form new corporations and acquire new properties, and by generally excluding [his] ownership rights and interests in newly formed businesses and purchased properties.

*Kermanshah*, 580 F.Supp.2d at 260.

The *Kermansha* allegations practically mirror those pleaded here by Lia:

> 24. However, Saporito and Armstead failed and refused to execute the formal agreements required under the 2003 Agreement *despite repeated requests,* even while they were still collecting funds from Lia each month toward the Project's development and costs.
>
> 41. [Defendants] have frozen Lia out of Hamilton Honda, despite: (i) Lia's having invested millions of dollars toward the acquisition of its underlying real property and related assets, (ii) Lia's payment for all of its development costs, capitalization and operating expenses, and (iii) the 2003 Agreement's requirement that Lia be responsible for Hamilton Honda's managerial decisions.
>
> 42. Lia is still owed nearly all of his capital investment. Despite repeated demands, he has realize none of the benefits of the Dealership's reported sales growth, and none of the 75% distributions to which he is contractually entitled.

Complaint, ¶¶ 24, 41-42.

## 1. **Defendants' breach of the 2003 Agreement was ongoing**:

As here, the *Kermanshah* defendants moved to dismiss all claims as being time-barred.[3] The *Kermanshah* court denied that motion as to the contract claim, holding that the failure to make distributions was a continuing breach of the parties' agreement, restarting the statute of limitations with each failure.  Its analysis should be dispositive here:

> [If] a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Defendants' obligation to share equally in "corporate opportunities, investments, and businesses" was a continuing contractual obligation that presumably existed throughout the life of the various entities to which [plaintiff] contributed capital and equity, and from which he expected a fair return on his investment.* Defendants' failure to allow [plaintiff] to share equally in the businesses, as [he] alleges defendants were contractually obligated to do, falls within the six year statute of limitations because [plaintiff] alleges continuing breaches until the time [he] filed suit in the instant action … This adequately alleges contract breaches within the limitations period.

*Kermanshah,* 580 F.Supp.2d at 260-61 (citations omitted) (emphasis added).

Here, the Complaint does not allege that Saporito and Armstead simply announced to Lia in September 2004 that they refused to perform under the 2003 Agreement, but instead that they intended to freeze him out of Hamilton Honda.  It does not allege that they notified Lia then and there that there would be no 75% distributions, no repayment of his investment "with interest at the prime rate" (2003 Agreement, p. 1), and no management control (*Id.* at p. 2).  It was not definitive as of September 2004, or September 2005, or even September 2006.

As excerpted above, what the Complaint *does* allege is that defendants avoided Lia's demands for performance even as he continued to perform, "advanc[ing] to Jessie and Mike the total required capital investment for the Honda dealership (2003 Agreement, p. 1).  What it *does*

---

[3] The *Kermanshah* court's analysis of other claims on limitations grounds is discussed in order below.

allege is that while "Jessie and Mike" stopped short of repudiating the 2003 Agreement outright, they managed to avoid it whenever Lia reminded them that performance was due.

The Complaint also pleads partial performance of the 2003 (and 2006) Agreements, by alleging that "Lia is still owed *nearly all* of his capital investment" (Complaint, at ¶ 42) (emphasis added). While this is an indirect reference, which plaintiffs are constrained from elaborating on from outside the four corners of the Complaint on a Rule 12(b)(6) motion (p. 3 above), it must still be accepted as true. Therefore, defendants' repayment of even some of Lia's capital investment re-starts the 2003 Agreement as of the dates of that payment. (The same is true of Saporito's $25,000 partial payment on his demand Note to Saporito (Complaint, ¶ 92).

These allegations closely match the pleading which the *Kermanshah* court deemed a continuing breach sufficient to restart the statute of limitations. *See also Carvel v. Franchise Stores Realty Corp.*, 2009 WL 4333652 *6 (S.D.N.Y.) ("where a lease requires the payment of rent in installments the statute of limitations begins anew with each separate installment …non-payment of each installment restarts the statute of limitations"). Merely because the Complaint alleges that defendants' obligations were "triggered" by the Letter of Intent in September 2004 (Complaint, ¶ 23) does not limit the breach to a snapshot as of that moment in time.

## 2. The 2006 Agreement re-starts the limitations period as to both defendants, not only Saporito:

As noted above, the Second Circuit and New York Court of Appeals have both held that a defendant's written acknowledgement of default under a pre-existing contract, and/or promise to cure that default, will re-start the statute of limitations. *Guilbert*, 480 F.3d at 149, *citing Lew Morris Demolition Co., Inc. v. Board of Ed. of City of New York,* 40 N.Y.2d 516, 521 (1976). The 2006 Agreement – quoted word-for-word in the Complaint – is exactly such a writing. It tracks the *Guilbert/Lew Morris* standard almost perfectly, stating in pertinent part:

> This letter confirms that I have, directly or indirectly, *exclusively funded the acquisition, operating and carrying costs of each of the transactions referred to [below].* These payments have been made as capital contributions to the entities for the purposes of acquiring real estate, a liquor license(s), and to pay for all operating costs incurred by each entity. However, the Operating Agreements for the entities below do not accurately reflect our business agreement. *By your execution of this letter, you confirm and acknowledge that the Operating Agreements of the entities listed below shall be amended to acknowledge that I, Don Lia, am the sole member of the entities listed below.*

Complaint at ¶ 36, *citing* 2006 Agreement, Exh. F to Ostrove Decl'n, p. 1 (emphasis added).

The Complaint alleges further that "[t]he 2006 Agreement concluded by requiring Saporito to amend the LLCs' operating agreements in order to memorialize Lia's equity interests and capital contributions. *This requirement was consistent with the 2003 Agreement which Saporito and Armstead had still not performed.*" (Complaint, ¶ 37, *citing* 2006 Agreement, Exh. F to Ostrove Decl'n at p. 2) (emphasis added). The Complaint then alleges that "Saporito signed the 2006 Agreement on November 13, 2006, before a New York notary public" (*Id.* at ¶ 38).

The 2006 Agreement is significant for at least four reasons. First, it is an enforceable contract in its own right. Second, it is an unequivocal, written "acknowledgment or promise to perform a previously defaulted contract" under *Guilbert* and *Lew Morris Demolition,* re-starting the six-year limitations period on the 2003 Agreement as of November 13, 2006 (at the earliest). Third, that revival means that Armstead is not excused from performance merely because he did not sign the 2006 Agreement. If the 2003 Agreement is timely as to one defendant it should be timely as to both, because it required continuing performance from both. Fourth, the 2006 Agreement is quoted verbatim at Paragraphs 36 and 37 of the Complaint, meaning that plaintiffs have pleaded a timely claim as to both Agreements.

Plaintiffs could sue both defendants, on both on the 2003 and 2006 Agreements right now without violating the statute of limitations.  Defendants' motion to dismiss the First Cause of Action as time-barred should be denied.

**B. <u>Unjust enrichment</u>:**

Saporito suggests that the applicable limitations period for plaintiffs' claim of unjust enrichment is three years (Saporito Memo, p. 9), while Armstead cites the applicable period as six years (Armstead Memo, p. 15).  Armstead is slightly more correct. "While New York courts have occasionally applied a three-year statute of limitations to unjust enrichment claims, they more commonly apply a six-year statute of limitations." *Ross v. Thomas,* 2010 WL 3952903 *5 (*See also Id.* at *7 fn. 96  ("vast majority" apply six-year period "regardless of whether plaintiffs are seeking legal or monetary relief.").

The limitations period for an unjust enrichment claim "generally begins to run 'upon the occurrence of the wrongful act giving rise to a duty of restitution.'" *Itakura v. Primavera Galleries Inc.,* 2009 WL 1873530 (S.D.N.Y.) (citation omitted).  As they did on plaintiffs' breach of contract claim, defendants look to the September 2004 Letter of Intent as the wrongful event which "triggered" the unjust enrichment (Saporito Memo, p. 9; Armstead Memo, p. 15).

Again, *Kermanshah* is instructive.  It focuses not on the so-called "triggering event" as the accrual date for an unjust enrichment claim; but rather, *the time of enrichment*:

> The wrongful act giving rise to restitution [on plaintiff's unjust enrichment claim] would be not the steps the defendants took to deprive [him] of his interest in the rug businesses and real estate businesses ... *but when the defendants actually paid themselves money that belonged to [plaintiff]*." [B]efore that point, the [defendants] had neither been enriched nor possessed any of [plaintiff's] 'money or property' that 'equity and good conscience' would require it to return" ... The date when that occurred is not clear from the Amended Complaint, and may well have occurred within either the six or even the three year limitation period.

> [Plaintiff's] action is timely under either limitations period because the wrongful acts that could serve as the basis for unjust enrichment continued within three years of this action.

*Kermanshah*, 280 F.Supp.2d at 264-65, *citing Golden Pac. Bankcorp v. F.D.I.C.*, 273 F.2d 509, 520 (2d Cir. 2001) (emphasis added).[4]

Here, plaintiffs have not even alleged that the unjust enrichment took place in September 2004.  The Complaint is clear that Lia's unpaid distributions alone could not have begun until May 19, 2009 when Hamilton Honda opened for business (Complaint, ¶ 11); before then there was nothing to distribute.  Defendants' retention of those distributions obviously continues to enrich them, as plaintiffs have pleaded:

> Saporito and Armstead have "enjoyed the fruits of Hamilton Honda's success [and] effectively frozen him out, *withheld his contractual distributions and failed to repay his capital investment.* They have been unjustly enriched to that extent, at Lia's expense.

Complaint, ¶ 79; *Id.* at ¶ 84 (""amount [of enrichment] is believed to include ... *all profits and distributions of Hamilton Honda* that have been wrongfully withheld") (emphasis added)

Accordingly, the earliest that plaintiffs' unjust enrichment claim could have accrued would be after May 19, 2009.  The Sixth Cause of Action is timely under either a three-year or six-year limitations period.

### C.   Constructive trust, fiduciary duty and accounting:

The limitations analysis on plaintiffs' Fourth, Fifth and Seventh Causes of Action for constructive trust, fiduciary duty and an accounting of Hamilton Honda's revenues and expenses mirrors the analysis for unjust enrichment, above.  The limitations period for all three claims is six years, with the cause of action accruing "when the plaintiff knows or has reason to know of

---

[4]   This Court cited *Kermanshah's* statute of limitations analysis recently in *Sriraman v. Patel*, 761 F.Supp.2d 7, 21 (E.D.N.Y. 2003).

the injury forming the basis of the action." *Ellul v. Congregation of Christian Bros.*, 2011 WL

1085325 *4 (S.D.N.Y.). *See also Zane v. Minion*, 63 A.D.3d 1151 (2d Dep't 2009):

> A determination of when the wrongful act triggering the running of
> the Statute of Limitations occurs depends upon whether the
> constructive trustee acquired the property wrongfully, in which
> case the property would be held adversely from the date of
> acquisition . . . or whether the constructive trustee wrongfully
> withholds property acquired lawfully from the beneficiary, in
> which case the property would be held adversely from the date the
> trustee breaches or repudiates the agreement to transfer the
> property.

*Zane*, 63 A.D.3d at 1151, 1153.

Plaintiffs' constructive trust and accounting by definition relate to the operations of

Hamilton Honda. Their accrual date for purposes of limitations can only be May 19, 2009, when

Hamilton Honda opened.  The claims are therefore timely even under a three-year limitations

period to May 18, 2012 and without question under a six-year period.

**D.  Declaratory judgment:**

The statute of limitations period for a declaratory judgment action is based on the

underlying substantive claims upon which it is premised. *Kermanshah*, 580 F.Supp.2d at 268,

*citing* authorities. Consistent with their premise as to the accrual date of all other claims,

defendants argue that the key date for purposes of declaratory judgment is September 2004

(Saporito Memo, p. 10, Armstead Memo, p. 19).  If plaintiffs are correct with respect to those

other claims, then they must be correct with respect to declaratory judgment. *See Kermanshah*,

580 F.Supp.2d at 268 ("To the extent [plaintiff's] declaratory judgment claim rests on the

substantive claims described above, all of which fall within their relevant statutes of limitations,

[his] declaratory judgment claim also survives dismissal"), *citing* authorities.

### III.    LIA IS NOT JUDICIALLY ESTOPPED
####        FROM PROSECUTING THIS ACTION.

Both defendants argue that Lia is judicially estopped from prosecuting this case, because its core allegations contradict his 2005 deposition testimony in the New Jersey administrative proceeding. Both correctly identify the three-part standard for application of judicial estoppel, which this Court articulated recently in *Kuar v. Mawn*, 2011 WL 838911 (E.D.N.Y.):

> Typically, judicial estoppel will apply if: (1) a party's later position is 'clearly inconsistent' with [its] earlier position; (2) [its] former position has been adopted in some way by the court in the earlier proceeding; and (3) [it] would derive an unfair advantage against the party seeking estoppel. …

*Kuar*, at *11 (citations omitted).

The third element of this standard may also be phrased as "'unfair detriment' to the moving party rather than unfair advantage to the party to be estopped.'" *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011) (citation omitted).[5] Here, neither defendant addresses that element at all, in terms of detriment or advantage. Armstead's brief is silent on this point, addressing only the first factor (inconsistent positions), despite a lengthy string-cite (Armstead Memo, pp. 20-21).  Saporito's brief is not silent, but it might as well be.  He makes a token reference, framing Lia's ostensibly unfair advantage as being able to "advance" his own theory of majority ownership in the Hamilton Honda dealership (Saporito Memo, p. 14 at Section II-C), despite having disavowed it six years ago.

It is hardly surprising that neither defendant can identify: (i) a *bona fide* advantage that Lia's position affords him in this case, other than allowing him to pursue this case; or (ii) a *bona fide* "detriment" imposed on them, other than having to defend this case.

---

[5] Lia does not address the first two criteria of *Kuar*, because to do so would be inconsistent with his position that his 2005 testimony is not properly before the Court on a pleadings motion (pp. 4-5 above).

This is because no such advantage or detriment exists.  Substantively, neither defendant claims to have been injured by reason of Lia's testimony in the 2005 administrative hearing. Procedurally, the parties are standing on a level playing field.  This case is plainly in its infancy, neither defendant will be prevented from cross-examining Lia, in discovery or at trial. *Compare*, *Intellivision v. Microsoft Corp.*, 784 F.Supp.2d 356, 365 (S.D.N.Y. 2011) (plaintiffs judicially estopped from stating new position "more than a year after the close of fact discovery and two months after the defendant had moved for summary judgment, leaving [it] unable to develop the facts needed to respond to the plaintiffs' argument").

"Judicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" *Source Search Technologies, LLC v. LendingTree, LLC*, 588 F.3d 1063, 1071 (C.A. Fed. 2009) (*citing* Third Circuit law).  Although it has not yet adopted the "miscarriage of justice" gloss of *Source Search Technologies*, "[t]he Second Circuit [also] has taken a fairly narrow view of the doctrine, stating that [it] is limited 'to situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" *In re CCT Communications, Inc.*, 420 B.R. 160, 169 (Bkrtcy. S.D.N.Y. 2009), *citing Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d Cir. 2005). "In other words, the [prior] inconsistent statement must have a material effect on the outcome of the subsequent proceeding." *American Mfrs. Mutual Ins. Co. v. Payton Lane Nursing Home*, 2010 WL 652832 *3 (E.D.N.Y.).

Even assuming that Lia's testimony six years ago in a hearing brought by a stranger to the facts of this case is inconsistent with his Complaint, that testimony cannot materially affect the outcome of this case. At most, it would give defendants fodder for cross-examination. *See BeautyBank, Inc. v. Harvey Prince LLP*, 2011 WL 4352639 *8 (S.D.N.Y.) (even if defendant in trademark infringement action had made false statements in filings with U.S. Patent &

Trademark Office, the statements "did not cause him to derive an unfair advantage or cause [plaintiff] to suffer an unfair detriment"). *American Mfrs* and *CCT Communications* therefore do not apply, defendants fail the three-part standard of *Kuar*, there is no miscarriage of justice, and Lia is not judicially estopped from pursuing his claims.

Saporito's throwaway argument that the 2003 and 2006 Agreements are illegal because they were "designed to fool third parties" (Saporito Memo, p. 21) should be rejected on the same grounds.  As with any reference to the Willis Protest, this argument ventures far beyond the four corners of the Complaint (p. 13-14 above). Saporito is obviously insinuating that the agreement was intended to deceive the New Jersey Motor Vehicle Franchise Committee in connection with the Willis Protest.  However, the 2003 Agreement pre-dated that proceeding by at least a full year.  His argument for dismissal on the basis of illegality cannot be taken seriously.

## IV.    THE UNCLEAN HANDS DOCTRINE DOES NOT BAR LIA'S CLAIMS FOR EQUITABLE RELIEF.

Saporito argues further that Lia "comes before the Court with unclean hands," meaning that his claims for equitable relief (declaratory judgment, unjust enrichment, specific performance, accounting and constructive trust) should be dismissed (Saporito Memo, p. 15). The conduct on which Saporito bases this theory is the same as he alleges in arguing judicial estoppel -- Lia's deposition testimony in the 2005 New Jersey administrative hearing *(Id.)*.

Under New York law, the doctrine of unclean hands requires proof that:  (1) the plaintiff is guilty of immoral, unconscionable conduct; (2) the defendant relied on such conduct; and (3) the purportedly immoral conduct caused the defendant injury. *Jane Doe v. Deer Mountain Day Camp, Inc.*, 682 F.Supp.2d 324, 338 fn 31 (S.D.N.Y. 2010).  The doctrine only applies 'when the conduct relied on is directly related to the subject matter in litigation and the party seeking to

invoke the doctrine was injured by [it]." *Beacher v Estate of Beacher,* 756 F.Supp.2d 254, 279-80 (E.D.N.Y. 2010) (citations omitted).

Assuming for purposes of this motion that Saporito has adequately argued the first part of this standard (which plaintiffs do not concede), he does not address the second or third parts. He makes no claim of having relied on Lia's 2005 testimony for any reason, or that the testimony caused him or Armstead any injury. In any event, unjust enrichment "is peculiarly fact-specific, rendering dismissal on the skeletal basis of the pleadings inappropriate." *Broadcast Music, Inc. v. Hearst/ ABC Viacom Entertainment Services,* 746 F.Supp. 320, 329-30 (S.D.N.Y. 1990).

Lia's Second Cause of Action for declarations that he is the rightful owner of the LLCs and real property identified in the Complaint, and a 75% owner of Hamilton Honda (Complaint, ¶¶ 51-66), flows directly from his contractual rights in the 2003 and 2006 Agreements. Unclean hands is not a defense to such relief. *See S.E.C. v. Eberhard,* 2006 WL 17640 *4 (S.D.N.Y.) ("Because a declaratory judgment action is not an equitable proceeding, the unclean hands defense may not be asserted").

Lia's First Cause of Action seeks specific performance of the 2003 and 2006 Agreements (Complaint, ¶¶ 43-50). Unclean hands was rejected as a basis for dismissing an action for specific performance where the conduct of which plaintiff was accused – even where related to the matter at issue – did not inure "to the detriment of the other party" in *Wecare Holdings, LLC v. Bedminster Intern. Ltd.,* 2009 WL 604877 *11 (W.D.N.Y.). As in *Wecare Holdings,* these defendants cannot credibly suggest that Lia's prior testimony (even if inconsistent with the allegations of his Complaint) inured to their detriment. If anything, their characterization of that testimony suggests that it would have supported them in that case. Had the testimony actually

injured Saporito or Armstead, then they would presumably be identifying such injury, not merely suggesting that it deceived "several non-parties" (Saporito Memo, p. 15).[6]

New York law holds that "a defendant may not invoke the clean hands doctrine in order to bar judicial scrutiny of his or her own malfeasance." *Dillon v. Dean*, 158 A.D.2d 579, 580 (2d Dep't 1990). That is the real intent of these motions. It should not be indulged. There can be no question that Lia was entitled to share in the profits and defendants have failed to make any distributions to him. How much were the profits? Where did they go?

## V. PLAINTIFFS STATE A CLAIM FOR SPECIFIC PERFORMANCE PERFORMANCE OF THE 2003 AND 2006 AGREEMENTS.

Saporito argues that the 2003 Agreement is unenforceable as a mere "agreement to agree," and lacks the proverbial "meeting of the minds" (Saporito Memo, p. 16).[7] He relies heavily on *Yan's Video, Inc. V Hong Kong TV Video Programs, Inc.*, 133 A.D.2d 575 (1st Dep't 1987), where a preliminary injunction was reversed because plaintiff was held unlikely to succeed on the merits of its underlying claim for breach of contract. The basis for reversal on that issue was that the subject contracts, sub-licensing agreements for the distribution of certain imported videotapes, were mere "agreements to agree" (*Yan's Video*, 133 A.D.2d at 578).

---

[6] Lia's other equitable claims -- unjust enrichment (Complaint, ¶¶ 83-85) and an accounting of Hamilton Honda's profits (*Id.* at ¶¶ 86-88) -- are inherently fact-intensive and ill-suited to a pleadings motion under Rule 12(b)(6). *See Pro Bono Investments, Inc. v. Gerry*, 2005 WL 2429777 (S.D.N.Y.) ("because genuine issues of fact remain as to the plaintiff's claim for unjust enrichment and the defense of unclean hands, the defendants' motion for summary judgment on the unjust enrichment claim is denied"); and *Mastercard Intern. Inc. v. First Nat. Bank of Omaha, Inc.*, 2004 WL 326708 *11 (S.D.N.Y.) (in evaluating claim for accounting, and defense of unclean hands, "*finder of fact may also consider ...* unclean hands, to determine whether, 'on the whole, the equities weigh in favor of an accounting.'" (italics added) (citations omitted).

[7] Armstead "adopts" Saporito's arguments on these points "in the interest of brevity" (Armstead Memo, p. 15 fn. 3). Accordingly, plaintiffs' arguments in this section will cite only to Saporito's brief.

### A. <u>The 2003 Agreement did reflect a meeting of the minds on essential terms.</u>

Saporito argues that because the 2003 Agreement and the unenforceable sub-licensing agreements in *Yan's Video* both reference future agreements, the 2003 Agreement must also be merely an agreement to agree (Saporito Memo, pp. 16-17). However, *Yan's Video* is distinguishable. Whereas the *Yan's Video* agreements stated that the parties would negotiate renewals "upon terms and conditions to be negotiated" (*Yan's Video*, 133 A.D.2d at 576), the 2003 Agreement contemplates execution of additional formal agreements that incorporate the terms and conditions contained herein" (Compare, 2003 Agreement at p. 3). Thus, unlike the *Yan's Video* agreements, the terms and conditions were already fixed in the agreement itself.

Further, the 2003 Agreement expressly states the parties' understanding that "[it] is intended to be binding on [them], their heirs and assigns" *(Id.)*. If the sub-licensing agreements at issue in Yan's Video contained such language, the opinion does not mention it.

*Teutel v. Teutel*, 79 A.D.3d 851 (2d Dep't 2010), which Saporito cites for the proposition that open terms must be "sufficiently precise" to be determined objectively (Saporito Memo, pp. 16-17) is also inapposite, for two reasons: (i) The *Teutel* "open terms' (valuation of an option to purchase stock) was truly "open," and insusceptible of precise measurement, whereas the purportedly open term in the 2003 Agreement (fair market rent) can be readily foxed at a sum certain under standard market analysis; and (ii) the *Teutel* open term went to the core bargain of the contract, whereas the 2003 Agreement open term was just an ancillary point, not essential to the overall transaction.

The contract at issue in *Teutel* was an option for plaintiff to purchase shares in a closely held corporation at fair market value, under "a *procedure* to be determined" (*Teutel*, 79 A.D.3d at 852). Saporito focuses on a clause in the 2003 Agreement which provides that Lia will

purchase the dealership's underlying real estate, and then rent the property back to the dealership once formed, "*at a fair market rent* to be determined" (Saporito Memo at p. 17, *citing* 2003 Agreement at p. 1).

It is true that both clauses use the phrase "to be determined." However, in Teutel that phrase goes to the manner in which the parties would negotiate *how* they "determine" a value for the subject shares. In that context, "to be determined" truly does leave the contract "insufficiently precise" to be enforceable. In the 2003 Agreement, however, "to be determined" goes not to procedure, but to a real number – the fair market rental ("FMR") of Hamilton Honda's realty once it would have to start renting it from Lia. FMRs are calculated annually by the Office of Management and Budget through statistical analysis of published census and survey data from the Metropolitan Core-Based Statistical Areas for any area of the country.[8]  Thus the term "fair market rent" in the 2003 Agreement is in fact "sufficiently precise to be determined objectively" (Saporito Memo, p. 16), at any time.

The second reason that *Teutel* is inapposite is that the term "procedure to be determined" there was not only material, but went to the heart of the contract itself – valuation of the subject shares. Without that material term there would be no option for the plaintiff to buy those shares, and thus not agreement to litigate. The 2003 Agreement's reference to the FMR of Hamilton Honda's realty was only an ancillary term. It had nothing to do with the parties' internal relationship or interests in the dealership. Without it, the 2003 Agreement could still be enforced.

Saporito also argues that the 2003 Agreement's reference to setting the dealership's going-concern value before it started operations (2003 Agreement, p. 2) is "left open" (Saporito Memo, p. 17). That term is also immaterial to the parties' allocation of interest in the dealership.

---

[8]  As another example, FMRs are also calculated annually by the Department of Housing and Urban Development to determine payment standards for public assistance housing under Section 8(c) of the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*

Nor does it have anything to do with Lia's promise to contribute 100% of the dealership's capital requirements, and Armstead/Saporito's willingness to accept that promise by reducing their respective interests.

Further, the 2003 Agreement does not state that the parties will "negotiate" the goodwill value, as in *Yan's Video* and *Teutel*. It says that "Don, in consultation with Jessie and Mike, will establish [it]" *(Id.)*, meaning that ultimately, the decision would belong to Lia.  This was consistent with Lia's contribution of 100% of the capital under the 2003 Agreement, and his authority "[to] make all management decisions" regarding the dealership *(Id.* at p. 2).  As noted, defendants stated their intent to be bound by all of these conditions.

Accordingly, the 2003 Agreement does not fail because it has too many "open terms," or any open terms at all.   Neither *Yan's* Video nor *Teutel* support such a position.

## B.  **The Complaint properly pleads full performance by Lia,**

Saporito's argument that "Lia did not perform" (Saporito Memo, p. 19) again seeks to introduce "factual" allegations from outside the four corners of the Complaint. As with his references to the Willis Protest (pp. 3-5 above), this argument should be disregarded.  First, plaintiffs have pleaded Lia's contractual performance in detail (Complaint, ¶¶ 13, 25-29), and allege unequivocally that Lia "performed all of his obligations under the 2003 Agreement and the 2006 Agreement" *(Id.* at ¶ 46).   Second, these allegations are presumed true on a Rule 12(b)(6) motion, meaning that Saporito's charge of non-performance is not only extrinsic to the Complaint but in any event must be presumed <u>untrue</u>.

In any event, the suggestion that "Lia does not plead that he performed his obligation to contribute 100% of the capital for the dealership" (Saporito Memo, p. 19) is astonishing. The Complaint unequivocally alleges that "it was Lia alone *who contributed 100% of the funding* for

the dealership that ultimately became Hamilton Honda – not Saporito and not Armstead" (Complaint, ¶ 17) (emphasis added).  Regardless, any allegation as to Lia's performance must be the subject of discovery and future motion practice or a trial.  It has no place here.

### C.  **The 2006 Agreement states a claim, and is susceptible to specific performance**.

Saporito argues incorrectly that the 2006 Agreement fails for lack of consideration (Saporito Memo, p. 20). In the 2006 Agreement, Saporito "reaffirms" Lia's prior consideration under the 2003 Agreement to contribute 100% of Hamilton Honda's investment capital (Complaint, ¶ 36), and his promise to amend the dealership's pertinent operating agreements accordingly. Essentially, it memorialized Sapotiro's acknowledgement that he had not yet performed under the 2003 Agreement.   An award of specific performance was affirmed under similar circumstances in *Friedman v. Miale*, 69 A.D.3d 789 (2d Dep't 2010):

> [T]he letter agreement dated August 24, 1994, which memorialized the oral agreement to convey to the plaintiff a one-third interest in the Quay Street property, constitutes a binding contract based upon valid past consideration, since it is written, signed by the promisor, and sufficiently expresses the partial consideration which the plaintiff provided in exchange for the promised conveyance … Accordingly, the Supreme Court properly directed specific performance of the contract to convey to the plaintiff a one-third interest in the Quay Street property.

*Friedman*, 69 A.D.3d at 791 (2d Dep't 2010), *citing Kreuter v. Tsucalas*, 287 A.D.2d 50, 54 (2d Dep't 2001) ("promise in writing and signed by the promisor ... shall not be denied effect as a valid contractual obligation on the ground that [the] consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed) (citations omitted).

## VI.    PLAINTIFFS STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST SAPORITO.

Saporito's disavowal of any fiduciary obligation to Lia "as an ordinary employee" (Saporito Memo, p. 22) is disingenuous.  First, he is not alleged to have been employee of Lia personally, but of plaintiff Mobile Management, LLC (Complaint, ¶¶ 71-73).  In any event, the Complaint states that Lia is the Managing Member of Mobile Management, LLC (*Id.* at ¶ 1).

More importantly, the Complaint is unequivocal that Saporito's employment was by no means "ordinary."  To the contrary, he is described as "highly compensated … with supervisory and operational responsibilities over multiple automobile dealerships" (*Id.* at  ¶ 72).  The nature of Saporito's fiduciary obligations of trust and loyalty is pleaded repeatedly:

> Saporito worked in increasingly prominent roles for Huntington Honda and Lia's other dealerships until his employment was terminated on January 31, 2007, under the circumstances giving rise to this action.  During that time Lia mentored Saporito in many aspects of the automobile and real estate businesses, *working closely with him on a daily basis, and entrusting him with the management of his dealership operations and various aspects of his real estate portfolio.*

> Further, unbeknownst to Lia, while Saporito's and Armstead's application for the Open Point was still pending, they had aligned themselves with an investor group that was pursuing Honda (and other) automobile dealerships in the New York Tri-State area. *When and if acquired, these dealerships would be direct competitors of: (i) Hamilton Honda, whose assets Lia had already paid for, (ii) Huntington Honda, the dealership at which Lia had originally hired Saporito in February 2000, and (iii) Lia's other dealerships, which Saporito was still managing at an executive salary.*

Complaint, ¶¶ 9-10, 33 (emphasis supplied).

Rather than determining the existence of a fiduciary relationship "by recourse to rigid formulas, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first."

.*Berman v. Sugo LLC*, 580 F.Supp.2d 191, 204 (S.D.N.Y. 2008).  *See also Stewart Title Ins. Co. v. Liberty Title Agency, LLC*, 83 A.D.3d 532, 533 (1st Dep't 2011) (plaintiff stated viable claim "since the parties are alleged to have created a relationship of higher trust than that which arose from the [subject] underwriting agreement alone"), *Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 153 F.Supp.2d 512, 521-22 (S.D.N.Y. 2001) (because of his position as a director and major employee of defendants, Protas had a fiduciary duty of undivided loyalty to the Center and the School").  The Fourth Cause of Action states a claim for breach of fiduciary duty of loyalty under these authorities.

### VII.    THE COMPLAINT STATES CLAIMS FOR UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST.

Armstead argues that plaintiffs' claims for constructive trust (Fifth Cause of Action) and unjust enrichment (Sixth Cause of Action) fail to state a claim (Armstead memo, pp. 15-16).

#### A.    Unjust enrichmen*t*:

"To prevail on a claim of unjust enrichment, plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense, and (3) that "it is against equity and good conscience to permit defendant to retain what is sought to be recovered." *Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 797 (3d Dep't 1999).   Armstead does not actually cite these elements; this portion of his brief actually discusses only the elements for a constructive trust.

The Complaint alleges that "without the benefit of Lia's capital investment, [defendants] would not have been able to apply for the Open Point, and then to form Hamilton Honda after American Honda issued the Letter of Intent.  Accordingly, [they] have been unjustly enriched by the value of the entire Dealership" (Complaint, ¶ 15).  This allegation captures all of the elements of an unjust enrichment claim under *Lake Minnewaska*.  There is no basis for dismissing it.

B. **Constructive trust**:

With respect to plaintiffs' claim for the imposition of a constructive trust (Complaint, ¶¶ 74-82), Armstead argues: (i) that they failed to allege having "parted with" some pre-existing interest in the assets over which they would impose the trust in reliance on a promise that those assets would be conveyed; and (ii) that they never had an interest in those assets with which to part (Hamilton Honda's revenues and underlying realty, and the EW Liquor License) to convey (Armstead Memo, pp. 16-17, *citing* authorities).

The elements of a claim for imposition of a constructive trust are: (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment. *Bodden v. Kean*, 86 A.D.3d 524, 526 (2d Dep't 2011).

Plaintiffs have pleaded all four elements. The first and fourth elements are their claims for fiduciary breach and unjust enrichment, and the "promise" in the second element is inherent in the 2003 and 2006 Agreements. The third element, a transfer in reliance on that promise, is plainly Lia's multi-million investment in 100% of the capital requirements of Hamilton Honda (Complaint, ¶ 77). In order to establish the third element, a transfer in reliance on the promise, it must be shown that the party seeking to impose the constructive trust had some interest in the property prior to obtaining the promise that the property would be conveyed," which was parted with in reliance on the promise (Armstead Memo, p. 16 *citing* authorities).

Lia's "interest" in Hamilton Honda's income-stream and real property, and in the East Windsor Liquor License, could not be more plain – he paid for them. "Generally, a constructive trust may be imposed when property has been acquired under such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest therein." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). The Complaint depicts exactly such circumstances.

## CONCLUSION

Upon the foregoing authorities, Saporito's and Armstead's motions should both be denied; together with such other and further relief as the Court shall deem just and proper.

Dated: New York, NY
         November 2, 2011

                                        **STEVEN COHN, P.C.**
                                        Attorneys for plaintiffs Don Lia,
                                        Mobile Management, LLC, and
                                        N.R. Automotive, Inc.

                                        By:   */S/ Jeffrey H. Weinberger*
                                              **JEFFREY H. WEINBERGER**

                                        One Old Country Road, Suite 420
                                        Carle Place, NY 11514
                                        (516) 294-6410