UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DON LIA, MOBILE MANAGEMENT, LLC,
and N.R. AUTOMOTIVE, INC.

               Plaintiffs,

      -against-                          11-CV-3621(SJF)(ETB)

MICHAEL SAPORITO and JESSE ARMSTEAD,

               Defendants.
------------------------------------------------------------------X  **ORDER**
W&D IMPORTS, INC., doing business as
Willis Honda, and DAVID DAVIS,

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  NOV 06 2012  ★

**LONG ISLAND OFFICE**

           Consolidated Plaintiffs,

      -against-
DON LIA, MOBILE MANAGEMENT, LLC,
N.R. AUTOMOTIVE, INC., MICHAEL SAPORITO,
JESSE ARMSTEAD, ALLSTAR MOTORS OF L.I.
INC., ALL STAR MOTORS, LLC, doing business as
Hamilton Honda, AMERICAN HONDA MOTOR
CO., INC. and DOES 1 THROUGH 7,

           Consolidated Defendants.
------------------------------------------------------------------X
FEUERSTEIN, District Judge:

     On June 30, 2011, plaintiffs Don Lia ("Lia"), Mobile Management, LLC ("Mobile

Management") and N.R. Automotive, Inc. ("N.R. Automotive") (collectively, "the Lia parties")

filed a complaint ("the Lia complaint" or "the Lia action") in the Supreme Court of the State of

New York, County of Nassau, against defendants Michael Saporito ("Saporito") and Jesse

Armstead ("Armstead") (collectively, "defendants"), alleging claims seeking specific

performance of two (2) agreements; judgment declaring Lia's ownership interest in certain

property; the imposition of a constructive trust on certain property and assets; an accounting; and

1

monetary damages for breach of fiduciary duty, unjust enrichment and breach of contract. On July 27, 2011, Saporito removed the action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332.[1] Pending before the Court are: (1) Saporito's motion to dismiss the Lia complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) Armstead's motion to dismiss the Lia complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, defendants' motions are granted in part.

## I.    Background

### A.    Factual Background[2]

The Lia parties allege that in or around March 2003, Lia and Saporito, with the

---

[1] On August 25, 2011, plaintiffs W&D Imports, Inc., d/b/a Willis Honda, and David Davis (collectively, "Willis Honda"), commenced an action in this Court against the Lia parties, Saporito and Armstead, as well as Allstar Motors of L.I. Inc. ("Allstar L.I."), All Star Motors, LLC, d/b/a Hamilton Honda ("All Star" or "Hamilton Honda"), American Honda Motor Co., Inc. ("American Honda") and Does 1 Through 7 ("the Doe defendants") ("the Willis Honda action"), alleging claims for violations of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and the New Jersey RICO statute, N.J.S.A. 2C:41-2(c) and (d); tortious interference with present and prospective economic advantage; breach of fiduciary duty (against American Honda only); negligence (against American Honda only); breach of the implied covenants of good faith and fair dealing (against American Honda only); and equitable estoppel, and seeking, *inter alia*, monetary damages; an accounting; the imposition of a constructive trust upon all past and future profits of, and property owned by, Hamilton Honda; judgment declaring that the ultimate decision in the underlying administrative proceeding was procured unlawfully and in violation of RICO and that Willis Honda is the equitable owner of Hamilton Honda and the associated realty; and an order requiring the Lia parties to divest themselves of any interest in the Hamilton Honda Dealership and underlying realty. By order dated December 7, 2011, *inter alia*, the two (2) actions were consolidated for all pretrial purposes.

[2] The factual allegations are taken from the Lia complaint and documents of which this Court may take judicial notice, and do not constitute findings of fact by the Court.

participation of Armstead, decided to pursue an "open point," i.e., the formation of a new automobile dealership in a specific geographic region, in central New Jersey that had been announced by American Honda. (Lia Compl., ¶ 15). On April 22, 2003, Lia and defendants executed a purported agreement ("the 2003 Agreement"), pursuant to which, *inter alia*: (1) defendants agreed to apply for the open point in their names, with Armstead initially owning fifty-one percent (51%) of the prospective dealership as the "Dealer" and Saporito owning forty-nine percent (49%) of the prospective dealership as the "Dealer Manager," (Lia Compl., ¶¶ 18-19); (2) Lia agreed (a) to contribute one hundred percent (100%) of the new dealership's "total required capital investment," to be repaid under a three (3)-year, self-liquidating prime rate note, (b) to purchase the real property on which the dealership would operate, (c) to build an automobile sales/service facility in conformance with American Honda's specifications and (d) to make all of the management decisions for the prospective dealership, (Lia Compl., ¶ 20); (3) Lia would be entitled to require, on demand, that defendants transfer to him seventy-five percent (75%) of their combined ownership interests in the prospective dealership, (Lia Compl., ¶ 21); and (4) defendants were required to "execute additional formal agreements that incorporate the [foregoing] terms and conditions" upon American Honda's issuance of a letter of intent awarding them the open point, (Lia Compl., ¶ 22).

Defendants applied for the open point in their names only and represented to American Honda that they, personally, were providing all of the necessary funds. (Lia Compl., ¶ 17). However, according to the Lia parties, "it was Lia alone who contributed 100% of the funding for the dealership that ultimately became Hamilton Honda * * *." (Id.)

In 2003, in compliance with American Honda's property requirements for the open point,

3

Lia, in the name of "Allstar Route 130 EW, LLC," purchased approximately eight (8) acres of real property located in East Windsor, New Jersey. (Lia Compl., ¶ 25). However, American Honda ultimately deemed that property unsuitable for the open point, so Lia invested more funds for its redevelopment for an alternative use. (Lia Compl., ¶ 26).

In September 2004, "[i]n continuing pursuit of the Open Point," Lia, in the name of "Allstar Route 130 HS, LLC," purchased approximately eleven (11) acres of real property in Hamilton Township, New Jersey ("the Hamilton Property"). (Lia Compl., ¶ 27). In addition, Lia, in the names of five (5) additional limited liability companies, purchased contiguous real property, including property referred to as the "Frank's Nursery Property." (Lia Compl., ¶ 28).

In September 2004, American Honda awarded the open point to defendants ("the Hamilton Honda Dealership project"). (Lia Compl., ¶¶ 23, 30). According to the Lia parties, defendants failed and refused to execute the additional formal agreements required under the 2003 Agreement. (Lia Compl., ¶¶ 24, 31). In addition, the Lia parties allege that unbeknownst to them, defendants pursued potentially competing dealerships while their application for the open point was pending and applied to American Honda Finance Corporation ("AHFC") for approximately forty million dollars ($40,000,000.00), executing loan documents in favor of AHFC for a mortgage of approximately twenty million dollars ($20,000,000.00) on the Hamilton Property. (Lia Compl., ¶¶ 33-34). The Lia parties further allege that Saporito improperly transferred a one million nine hundred thousand dollar ($1,900,000.00) mortgage from the Hamilton Property to the adjacent property owned by Lia personally. (Lia Compl., ¶ 35).

The Lia parties contend that in early November 2006, upon learning of defendants' pursuit of potentially competing dealerships, Lia had a 2006 Agreement drafted, confirming that

4

he had "exclusively funded the acquisition, operating and carrying costs" of the Hamilton Honda Dealership project and demanding that the operating agreements for the Hamilton Honda Dealership project be amended to acknowledge that Lia is "the sole member" thereof. (Lia Compl., ¶ 36). Although Saporito signed the 2006 Agreement on November 13, 2006, he failed and refused to execute the necessary amendments to the operating agreements as required thereunder. (Lia Compl., ¶ 38).

On May 19, 2009, defendants opened a sixty-five (65) thousand square-foot Honda automobile dealership ("the Hamilton Honda Dealership") on a twelve (12)-acre campus in Hamilton, New Jersey. (Lia Compl., ¶¶ 11, 40). According to the Lia parties, defendants have frozen Lia out of the Hamilton Honda Dealership, "depriving [him] of "participation in its 'sky-rocketing' growth and withholding his rightful distribution, with millions of dollars invested currently unpaid and with no managerial control." (Lia Compl., ¶¶ 14, 41-42). The Lia parties contend that Lia invested in excess of ten million dollars ($10,000,000.00) to purchase the Hamilton Honda Dealership's underlying real estate and other assets and to fund its development costs and operating expenses. (Lia Compl., ¶¶ 13, 41).


B.     Procedural History

On June 30, 2011, the Lia parties filed a complaint in the Supreme Court of the State of New York, County of Nassau, which Saporito removed to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. In their complaint, the Lia parties seek: (1) specific performance of the 2003 and 2006 Agreements (first cause of action); (2) judgment declaring that Lia is (a) the sole owner of the property he acquired, in the name of certain limited

liability companies, in relation to the Hamilton Honda Dealership, (b) a seventy-five percent

(75%) owner of the Hamilton Honda Dealership and (c) entitled to seventy-five percent (75%),

and full managerial control, of the Hamilton Honda Dealership (second cause of action); (3)

monetary damages for breach of fiduciary duty (third and fourth causes of action against Saporito

only), unjust enrichment (sixth cause of action) and breach of contract (eighth cause of action

against Saporito only); (4) imposition of a constructive trust upon the Hamilton property and

related assets, and the revenues of the Hamilton Honda Dealership (fifth cause of action); and (5)

an accounting of the Hamilton Honda Dealership's revenues and expenses since its formation in

2009 (seventh cause of action).

Defendants now move pursuant to, *inter alia*, Rule 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss the Lia complaint.


II.    Discussion

A.    Rule 12(b)(6) Standard of Review[3]

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is

plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167

L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only

give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests."

---

[3] The branch of Armstead's motion seeking dismissal of the Lia complaint for lack of
subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is
denied because the statute of limitations is an affirmative defense that does not implicate this
Court's subject matter jurisdiction. Doe v. Constant, 354 Fed. Appx. 543, 545 (2d Cir. Dec. 1,
2009); see also Chimblo v. C.I.R., 177 F.3d 119, 125 (2d Cir. 1999) (holding that generally, "the
statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional.")

Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See McGarry v. Pallito, 687 F.3d 505, 510 (2d Cir. 2012); Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d

110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). Agency determinations and administrative findings are public records of which a court may properly take judicial notice. See, e.g. Radaszewski ex rel. Radaszewski v. Maram, 383 F.3d 599, 600 (7th Cir. 2004); Furnari v. Warden, Allenwood Correctional Institute, 218 F.3d 250, 255-56 (3d Cir. 2000); Muhammad v. New York City Transit Authority, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006); Johnson v. County of Nassau, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006); Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 277 (S.D.N.Y. 2002).

B.  Timeliness of Claims

1.  Choice-of-Law

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." Stuart v. American Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998); see also Forest Park Pictures v.

8

Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012) ("A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state."); Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) ("[I]n diversity cases state law governs not only the limitations period but also the commencement of the limitations period. * * * To determine which state's law applies, a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits.") "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the action occurred outside New York." Stuart, 158 F.3d at 627; see also Bulgartabac Holding AD v. Republic of Iraq, 451 Fed. Appx. 9, 10 (2d Cir. Dec. 5, 2011) (summary order); Daisley v. FedEx Ground Package System, Inc., 376 Fed. Appx. 80, 81 (2d Cir. May 10, 2010) (summary order). "This general rule, however, is subject to * * * New York's 'borrowing' statute, C.P.L.R. § 202." Stuart, 158 F.3d at 627.

New York's "borrowing" statute provides that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." Thus, "[u]nder C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." Stuart, 158 F.3d at 627; see also Muto v. CBS Corp., 668 F.3d 53, 57 (2d Cir. 2012) (accord); Cantor Fitzgerald, 313 F.3d at 710 (accord). However, plaintiffs who are residents of the State of New York are "affected only by the New York

limitations period." <u>Braniff Airways, Inc. v. Curtiss-Wright Corp.</u>, 424 F.2d 427, 428 (2d Cir. 1970); <u>see also</u> <u>Kilmer v. Flocar, Inc.</u>, 212 F.R.D. 66, 70 (N.D.N.Y. 2002) ("[W]hile non-New York State residents always face the shorter statute of limitations as between New York and the accrual state, New York State residents are always subject to the New York statute of limitations.")

Since the Lia parties are all residents of the State of New York, (Lia Compl., ¶¶ 1-3), New York's statutes of limitations apply.

    2.    Claims for Specific Performance (First Cause of Action) and Breach of Contract (Eighth Cause of Action)

The Lia parties' first cause of action seeking specific performance of the 2003 and 2006 Agreements is a claim for breach of contract governed by the six (6)-year statute of limitations under Section 213(2) of the New York Civil Practice Law and Rules. <u>See</u> <u>Guilbert v. Gardner</u>, 480 F.3d 140, 149 (2d Cir. 2007); <u>Hahn Automotive Warehouse, Inc. v. American Zurich Ins. Co.</u>, 18 N.Y.3d 765, 770, 944 N.Y.S.2d 742, 967 N.E.2d 1187 (N.Y. 2012). Generally, under New York law, a cause of action for breach of contract accrues, and the limitations period begins to run, at the time of the breach, <u>see</u> <u>Guilbert</u>, 480 F.3d at 149; <u>Raine v. RKO General, Inc.</u>, 138 F.3d 90, 93 (2d Cir. 1998); <u>Hahn Automotive</u>, 18 N.Y.3d at 770, 944 N.Y.S.2d 742, whether or not the plaintiff was aware of the breach. <u>See</u> <u>Guilbert</u>, 480 F.3d at 149 ("The plaintiff need not be aware of the breach or wrong to start the [limitations] period running."); <u>Jobim v. Songs of Universal, Inc.</u>, 732 F. Supp. 2d 407, 422 (S.D.N.Y. 2010).

"Where a contract does not specify a date or time for performance, New York law implies a reasonable time period." <u>Guilbert</u>, 480 F.3d at 149; <u>see also</u> <u>Schmidt v. McKay</u>, 555 F.2d 30,

35 (2d Cir. 1977); <u>Savasta v. 470 Newport Associates</u>, 82 N.Y.2d 763, 765, 603 N.Y.S.2d 821,

623 N.E.2d 1171 (N.Y. 1993). "What constitutes a reasonable time for performance depends

upon the facts and circumstances of the particular case," <u>Savasta</u>, 82 N.Y.2d at 765, 603

N.Y.S.2d 821, "including the subject matter of the contract, the situation of the parties, their

intention, what they contemplated at the time the contract was made, and the circumstances

surrounding performance." <u>Boehner v. Heise</u>, 734 F. Supp. 2d 389, 408 (S.D.N.Y. 2010); <u>see</u>

<u>also RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC</u>, 156 Fed. Appx. 349, 351 (2d

Cir. Nov. 17, 2005) (summary order); <u>U.S. for Use and Benefit of Falco Const. Corp. v. Summit</u>

<u>General Contracting Corp.</u>, 760 F. Supp. 1004, 1012 (E.D.N.Y. 1991); <u>Teramo & Co., Inc. v.</u>

<u>O'Brien-Sheipe Funeral Home, Inc.</u>, 283 A.D. 2d 635, 636, 725 N.Y.S.2d 87 (2d Dept. 2001).

"Ordinarily, the question of what is a reasonable time is one for a jury unless the facts are

undisputed." <u>Boehner</u>, 734 F. Supp. 2d at 408; <u>see also Tedeschi v. Northland Builders, LLC</u>,

74 A.D.3d 1613, 1614, 904 N.Y.S.2d 786 (3rd Dept. 2010); <u>Lake Steel Erection, Inc. v. Egan</u>, 61

A.D.2d 1125, 1126, 403 N.Y.S.2d 387 (4th Dept. 1978).


        a.        Claim for Specific Performance (First Cause of Action)

The Lia parties' allege: (1) that defendants breached the 2003 Agreement by failing to

execute the additional formal agreements incorporating that agreement upon American Honda's

issuance of a letter of intent awarding them the open point in September 2004, (Lia Compl., ¶¶

22-24, 30-31); and (2) that Saporito breached the 2006 Agreement, which he signed on

November 13, 2006, by failing to execute the necessary amendments to the operating agreements

for the Hamilton Honda Dealership project acknowledging that Lia is "the sole member" thereof,

(Lia Compl., ¶¶ 36, 38).

Contrary to the Lia parties' contention, it cannot reasonably be inferred from the allegations in the Lia complaint that defendants' breaches of the 2003 and/or 2006 Agreements was ongoing or continuing. Unlike the case <u>Kermanshah v. Kermanshah</u>, 580 F. Supp. 2d 247 (S.D.N.Y. 2008), upon which the Lia parties rely, the Lia parties do not base their claim for specific performance upon defendants' purported obligation to make distributions to them from the Hamilton Honda Dealership's profits. (<u>See</u> Lia Compl., ¶¶ 43-50). Rather, the claims for specific performance are based upon the discrete act(s) of defendants in failing to execute "additional formal agreements" and/or amendments to the Hamilton Honda Dealership's operating agreements upon the Lia parties' demand. Accordingly, the purported breaches of the 2003 and 2006 Agreements occurred when defendants failed to execute the documents within a reasonable time of the Lia parties' initial demands therefor. Moreover, the limitations period was not reset every time the Lia parties reiterated their demands that defendants execute the documents purportedly required under the 2003 and 2006 Agreements.

Nonetheless, since Saporito did not even sign the 2006 agreement until November 13, 2006, any breach of contract action could not have accrued more than six (6) years prior to the commencement of this action on June 30, 2011. Moreover, although the open point was awarded to defendants in September 2004, approximately six (6) years and nine (9) months prior to the commencement of this action, the date on which the Lia parties demanded performance under the 2003 Agreement is not set forth in the Lia complaint and it cannot be said as a matter of law that nine (9) months or less constitutes an unreasonable time for defendants' performance of the 2003 Agreement, i.e., within which to execute the additional formal agreements purportedly required

12

thereunder. Accordingly, the branches of defendants' motion seeking dismissal of the Lia parties' first cause of action as time-barred are denied.[4]

> b.  Breach of Contract Claim (Eighth Cause of Action)

The Lia parties allege that Saporito failed to pay the entire amount due on "a demand note from N.R. Automotive, Inc. dated October 31, 2002." (Lia Compl., ¶¶ 91-93).

In New York, the statute of limitations for a claim to recover on a promissory note is six (6) years. Morrison v. Zaglool, 88 A.D.3d 856, 858, 931 N.Y.S.2d 82 (2d Dept. 2011); Sce v. Ach, 56 A.D.3d 457, 458, 867 N.Y.S.2d 140 (2d Dept. 2008); see also Barash v. Siler, 124 Fed. Appx. 689, 690 (2d Cir. Mar. 9, 2005) (summary order). "A cause of action to recover on a note which is payable on demand accrues at the time of its execution." Morrison, 88 A.D.3d at 858; see also Parsons & Whittemore Enterprises Corp. v. Schwartz, 387 F. Supp. 2d 368, 377 (S.D.N.Y. 2005); Phoenix Acquisition Corp. v. Campcore, Inc., 81 N.Y.2d 138, 143, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (N.Y. 1993). Partial payment of a prior existing debt does not toll the limitations period unless "there was a payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder." Comerica Bank, N.A. v. Benedict, 39 A.D.3d 456, 457, 833 N.Y.S.2d 588 (2d Dept. 2007) (citing Lew Morris Demolition Co. v. Board of Education of City of New York, 40 N.Y.2d 516, 521, 387 N.Y.S.2d 409, 355 N.E.2d 369 (N.Y. 1976)); see also Schmidt v. Polish

---

[4] In light of this determination, and the dismissal of this action for the reasons set forth below, it is unnecessary to consider the Lia parties' contention that the 2006 Agreement re-started the limitations period with respect to both defendants' purported breach of the 2003 Agreement.

People's Republic, 742 F.2d 67, 72 (2d Cir. 1984) (holding that the statute of limitations "can be tolled only if a debtor pays the creditor under circumstances indicating an unequivocal intention to pay the balance.")

Since the demand note from N.R. Automotive, Inc. to Saporito was executed on October 31, 2002, any claim to recover thereon was required to be commenced on or before October 31, 2008. The Lia parties' allegation that Saporito made a partial payment on the note on or about December 22, 2008, (Lia Compl., ¶ 92), without more, is insufficient to toll the statute of limitations. Accordingly, the branch of Saporito's motion seeking dismissal of the Lia parties' eighth cause of action as time-barred is granted and the eighth cause of action is dismissed in its entirety with prejudice as time-barred.


### 3.     Claim for Declaratory Judgment (Second Cause of Action)

"[W]hen [a] proceeding has been commenced in the form of a declaratory judgment action, for which no specific Statute of Limitations is prescribed [under New York law], 'it is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought' in order to resolve which Statute of Limitations is applicable." New York City Health and Hospitals Corp. v. McBarnette, 84 N.Y.2d 194, 200-01, 616 N.Y.S.2d 1, 639 N.E.2d 740 (N.Y. 1994) (quoting Solnick v. Whalen, 49 N.Y.2d 224, 229, 425 N.Y.S.2d 68, 401 N.E.2d 190 (N.Y. 1980)); see also Kermanshah, 580 F. Supp. 2d at 268-69 ("The statute of limitations period for a declaratory judgment action is based on the underlying substantive claims upon which it is premised.") "Only if there is no other form of proceeding for which a specific limitation period is statutorily provided may the six-year catch-all limitations provided in

CPLR 213(1) be invoked." McBarnette, 84 N.Y.2d at 201, 616 N.Y.S.2d 1 (quotations and citation omitted). "In other words, if the claim could have been made in a form other than an action for a declaratory judgment and the limitations period for an action in that form has already expired, the time for asserting the claim cannot be extended through the simple expedient of denominating the action one for declaratory relief." McBarnette, 84 N.Y.2d at 201, 616 N.Y.S.2d 1; see also Grosz v. Museum of Modern Art, 772 F. Supp. 2d 473, 481 (S.D.N.Y. 2010), aff'd, 403 Fed. Appx. 575 (2d Cir. Dec. 16, 2010), cert. denied, 132 S. Ct. 102, 181 L. Ed. 2d 30 (2011).

In their second claim for relief, the Lia parties seek judgment declaring: (a) Lia's interest in certain real and personal property, (Lia Compl., ¶¶ 54-64); and (b) that Lia is a seventy-five percent (75%) owner, and is entitled to seventy-five percent (75%) of the profits and full managerial control, of the Hamilton Honda Dealership, (Lia Compl., ¶¶ 65-66). Contrary to defendants' contention, such claims do not seek monetary relief, (Armstead Mem., at 18; Saporito Mem., at 9), such that a three (3)-year statute of limitations would apply. Rather, the underlying substance of the Lia parties' declaratory judgment claim is defendants' alleged breaches of the 2003 and 2006 Agreements. As such, the declaratory judgment claim is governed by the six (6)-year statute of limitations period applicable to the Lia parties' breach of contract claims and, for the reasons set forth above, is not time-barred. Accordingly, the branches of defendants' motions seeking dismissal of the Lia parties' declaratory judgment claim (second claim for relief) as time-barred are denied.

15

4.     Breach of Fiduciary Duty Claims (Third and Fourth Causes of Action)

In their third and fourth causes of action, respectively, the Lia parties seek monetary damages against Saporito, (Compl., at pp. 17-18), alleging: (1) that Saporito breached his fiduciary obligations to Lia by, *inter alia*, "fail[ing] and refus[ing] to perform under the 2003 and 2006 Agreements and [retaining] Lia's multi-million dollar capital investment in the [Hamilton Honda Dealership] project," (Lia Compl., ¶ 69); and (2) that Saporito breached his fiduciary duty to Mobile Management, LLC by pursuing "other potentially competing dealerships while he was still receiving executive compensation from Mobile Management, LLC * * *," (Lia Compl., ¶ 73).

"New York law does not provide a single statute of limitations for breach of fiduciary claims. Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355, 907 N.E.2d 268 (N.Y. 2009); see also Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 942 (2d Cir. 1998). "Where the remedy sought is purely monetary in nature * * * a three-year limitations period [applies]." IDT Corp., 12 N.Y. 3d at 139, 879 N.Y.S.2d 355; see also Independent Order of Foresters, 157 F.3d at 942; Cooper v. Parsky, 140 F.3d 433, 440-41 (2d Cir. 1998). However, where the relief sought is equitable in nature, or where an allegation of fraud is essential to a breach of fiduciary duty claim, a six (6)-year limitations period applies. IDT Corp., 12 N.Y. 3d at 139, 879 N.Y.S.2d 355; see also Cooper, 140 F.3d at 440-41; Valentine v. Citigroup, Inc., 837 F. Supp. 2d 304, 326 (S.D.N.Y. 2011); In re General Vision Services, Inc., 423 B.R. 790, 793 (S.D.N.Y. 2010).

Since the relief sought by the Lia parties on their breach of fiduciary claims is monetary,

and those claims are not based upon allegations of actual fraud, a three (3)-year statute of limitations applies to those claims. With respect to the Lia parties' claim that Saporito breached his fiduciary duty to Mobile Management, LLC by pursuing "other potentially competing dealerships while he was still receiving executive compensation from Mobile Management, LLC * * *" (fourth claim for relief) (Lia Compl., ¶ 73), the Lia complaint alleges that Lia learned of Saporito's pursuit of such dealerships in early November 2006. (Lia Compl., ¶ 36). In any event, the latest that that cause of action could have accrued is January 31, 2007, when Saporito's employment was terminated. (Lia Compl., ¶¶ 9, 39, 73). Since this action was not commenced until June 30, 2011, the Lia parties' fourth claim for relief is time-barred. Accordingly, the branch of Saporito's motion seeking dismissal of the Lia parties' fourth cause of action as time-barred is granted and that claim is dismissed as time-barred.[5]

With respect to the Lia parties' claim that Saporito breached his fiduciary obligations to Lia by failing and refusing to perform under the 2003 Agreement, Saporito's purported obligation to execute additional formal agreements thereunder arose upon American Honda's issuance of the letter of intent in September 2004. Thus, the Lia parties' breach of fiduciary claim based upon the failure to perform under the 2003 Agreement should have been commenced on or before September 2007, or within a reasonable time thereafter. See, e.g. Guilbert, 480 F.3d at 149; Savasta, 82 N.Y.2d at 765, 603 N.Y.S.2d 821. As a matter of law, three (3) years and nine (9) months is not a reasonable time for performance of the 2003 Agreement, i.e., for defendants to execute the additional documents purportedly required thereunder. In any event, the latest that that claim could have accrued was in early November 2006, when Saporito

---

[5] In light of this determination, it is unnecessary to consider Saporito's contention regarding the sufficiency of the Lia parties' fourth cause of action.

purportedly signed the 2006 Agreement "reaffirming his * * * obligations under the 2003 Agreement," (Lia Compl., ¶ 36). Thus, any breach of fiduciary claim based upon Saporito's failure to execute the documents purportedly required under the 2003 Agreement was time-barred as of November 2009. Accordingly, the branch of Saporito's motion seeking dismissal of the Lia parties' third cause of action as time-barred is granted to the extent that that claim is based upon Saporito's failure to perform under the 2003 Agreement, and so much of that claim is dismissed as time-barred.

With respect to the Lia parties' claim that Saporito breached his fiduciary obligations to Lia by failing and refusing to perform under the 2006 Agreement, the Lia parties allege that shortly after Saporito signed the 2006 Agreement on November 13, 2006, Lia's attorney requested that Saporito's attorney draft the amendments purportedly required thereunder and that Saporito failed and refused to do so. (Lia Compl., ¶ 38). Accordingly, the Lia parties' breach of fiduciary claim based upon Saporito's failure to perform under the 2006 Agreement should have been commenced in or around November 2009, or within a reasonable time thereafter. As a matter of law, nineteen (19) months does not constitute a reasonable time for performance of the 2006 Agreement, i.e., for execution of the amendments to the operating agreements purportedly required thereunder. Accordingly, the branch of Saporito's motion seeking dismissal of the Lia parties' third cause of action as time-barred is granted to the extent that that claim is based upon Saporito's failure to perform under the 2006 Agreement, and so much of that claim is dismissed as time-barred.

However, with respect to the Lia parties' claim that Saporito breached his fiduciary duty by retaining Lia's "multi-million dollar capital investment in the [Hamilton Honda Dealership]

project," (Lia Compl., ¶ 69), and failing to pay Lia "his rightful share in the profits of [the] Hamilton Honda [Dealership] since May 2009," (Lia Compl., ¶ 70), that claim did not accrue until the Hamilton Honda Dealership was opened in May 2009. Accordingly, the branch of Saporito's motion seeking dismissal of the Lia parties' third cause of action as time-barred is denied to the extent that that claim is based upon Saporito's purported retention of Lia's capital investment in the Hamilton Honda Dealership project.

5.     Constructive Trust and Unjust Enrichment Claims (Fifth and Sixth Causes of Action)

a.     Constructive Trust Claim (Fifth Cause of Action)

"Since a cause of action for a constructive trust is one for which no limitation is specifically prescribed by law, it is governed by New York's six-year statute of limitations, N.Y. Civ. Prac. Law and Rules (CPLR) 213(1) * * * and runs from the occurrence of the wrongful act or event which creates a duty of restitution." Dolmetta v. Uintah National Corp., 712 F.2d 15, 18 (2d Cir. 1983) (quotations omitted); see also Reale v. Reale, 485 F. Supp. 2d 247, 252 (W.D.N.Y. 2007); Bausch & Lomb Inc. v. Alcon Laboratories, Inc., 64 F. Supp. 2d 233, 251 (W.D.N.Y. 1999). Generally, the date of the "wrongful act" "is the date that the party holding legal title takes some action that is inconsistent with the promise he made to the transferor." Reale, 485 F. Supp. 2d at 252.

The Lia parties seek to impose a constructive trust upon the Hamilton Property, assets, revenues, etc. "pending repayment of [Lia's] capital contributions," claimed to be in the amount of approximately nine million dollars ($9,000,000.00), (Lia Compl., ¶ 82), on the basis that defendants have "frozen [Lia] out, withheld his contractual distributions and failed to repay his

19

capital investment." (Lia Compl., ¶ 79). Accordingly, the purported wrongful acts of defendants could not have occurred prior to the opening of the Hamilton Honda Dealership on May 19, 2009. Therefore, the branches of defendants' motions seeking dismissal of the Lia parties' constructive trust claim (fifth cause of action) as time-barred are denied.

### b. Unjust Enrichment Claim (Sixth Cause of Action)

In New York, unjust enrichment claims seeking equitable relief are governed by a six (6)-year statute of limitations," Cohen v. Cohen, 773 F. Supp. 2d 373, 396-97 (S.D.N.Y. 2011) (alterations, quotations and citations omitted); see also State Farm Mut. Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 103-04 (E.D.N.Y. 2010); Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 430-31 (S.D.N.Y. 2009), whereas unjust enrichment claims seeking monetary damages are governed by the three (3)-year statute of limitations under Section 214(3) of the New York Civil Practice Law and Rules. See, e.g. Kermanshah, 580 F. Supp. 2d at 263; Grynberg v. Eni S.p.A., No. 06 Civ. 6495, 2007 WL 2584727, at * 3 (S.D.N.Y. Sept. 5, 2007); Ingrami v. Rovner, 45 A.D.3d 806, 808, 847 N.Y.S.2d 132 (2d Dept. 2007). Regardless of the applicable limitations period, the period "begins to run upon the occurrence of the wrongful act giving rise to a duty of restitution," Cohen, 773 F. Supp. 2d at 396; see also Kermanshah, 580 F. Supp. 2d at 263, or "when a defendant accepts the benefits bestowed upon him * * *." L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc., 558 F. Supp. 2d 378, 409 (E.D.N.Y. 2008).

The Lia parties seek monetary damages against defendants claiming that defendants have been unjustly enriched by the value of the entire Hamilton Honda Dealership since they could not

have obtained that dealership without Lia's capital investment, and in the amount of all profits and distributions from that dealership that have been wrongfully withheld from him. (Lia Compl., ¶¶ 84-5). Since the relief sought by the Lia parties on their unjust enrichment claim is not equitable in nature, the three (3)-year limitations period applies. Nonetheless, since the Hamilton Honda Dealership did not open until May 19, 2009, defendants could not have wrongfully acted, i.e., withheld from Lia the distributions and profits therefrom, until after that date. Accordingly, the branches of defendants' motions seeking dismissal of the Lia parties' unjust enrichment claim (sixth claim for relief) as time-barred are denied.

6.    Accounting Claim (Seventh Cause of Action)

In New York, the six (6)-year limitations period set forth in Section 213(1) of the New York Civil Practice Law and Rules is generally applicable to accounting claims. See Klein v. Bower, 421 F.2d 338, 344 (2d Cir. 1970); Kermanshah, 580 F.Supp.2d at 269. Since the retention of profits and distributions is a continuing wrong, a cause of action for an accounting is timely so long as it pertains to acts or omissions occurring within the six (6)-year period preceding the commencement of the action. Since, as noted above, the Hamilton Honda Dealership was opened on May 19, 2009, well within the six (6)-year limitations period, the Lia parties' accounting claim is timely. Accordingly, the branches of defendants' motions seeking dismissal of the Lia parties' accounting claim (seventh claim for relief) as time-barred are denied.

C.    Sufficiency of Claims

    1.    Specific Performance Claim (First Cause of Action)

Specific performance of a contract is an equitable remedy. See Edge Group WAICCS

LLC v. Sapir Group LLC, 705 F. Supp. 2d 304, 312 (S.D.N.Y. 2010); DiPilato v. 7-Eleven, Inc.,

662 F. Supp. 2d 333, 345 (S.D.N.Y. 2009). In order to be entitled to specific performance under

New York law, the plaintiff must demonstrate: (1) that a valid contract exists between the parties;

(2) that the plaintiff has substantially performed its obligations under the contract and is willing

and able to perform its remaining obligations thereunder; (3) that the defendant is able to perform

its obligations under the contract; and (4) that the plaintiff has no adequate remedy at law. See

Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp., 992 F.2d 430, 433 (2d Cir. 1993); RJE Corp.

v. Northville Industries Corp., 198 F. Supp. 2d 249, 270 (E.D.N.Y. 2002), aff'd, 329 F.3d 310

(2d Cir. 2003); Edge Group, 705 F. Supp. 2d at 312; DiPilato, 662 F. Supp. 2d at 345. In

determining whether the plaintiff has an adequate remedy at law, "the guiding consideration is

the difficulty of proving damages with reasonable certainty." Edge Group, 705 F. Supp. 2d at

313 (quotations and citation omitted); see also Sokoloff v. Harriman Estates Development Corp.,

96 N.Y.2d 409, 415, 729 N.Y.S.2d 425, 754 N.Ed.2d 184 (N.Y. 2001) ("In determining whether

money damages would be an adequate remedy, a trial court must consider, among other factors,

the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute

performance with a damages award."); Barton Group, Inc. v. NCR Corp., 796 F. Supp. 2d 473,

502 (S.D.N.Y. 2011), aff'd, 476 Fed. Appx. 275 (2d Cir. Apr. 23, 2012) (accord). "[G]enerally,

the courts look to the specific circumstances of the case to determine whether there is a

sufficiently reliable means of measuring value for purposes of awarding contract damages."

Edge Group, 705 F. Supp. 2d at 313-14. Ordinarily, the issue of whether damages would adequately compensate a plaintiff is inappropriate for resolution on a motion to dismiss the complaint. See, e.g. Sokoloff, 96 N.Y. 2d at 415, 729 N.Y.S.2d 425.

Contrary to defendants' contentions, the allegations in the complaint are sufficient at the pleadings stage to state a claim for specific performance of the 2003 and 2006 Agreements. Accordingly, the branches of defendants' motions seeking dismissal of the Lia parties' first cause of action for failure to state a claim for relief are denied.


2.      Declaratory Judgment Claim (Second Cause of Action)

Armstead contends that the Lia parties' declaratory judgment claim must be dismissed pursuant to N.Y. C.P.L.R. § 3017(b) because they "have failed to set forth with specificity the rights and other legal relations of the parties on which a declaration is requested." (Armstead Mem., at 19).

Section 3017(b) of the New York Civil Practice Law and Rules provides, in relevant part, that "[i]n an action for a declaratory judgment, the demand for relief in the complaint shall specify the rights and other legal relations on which a declaration is requested * * *." "The sole consideration in determining a pre-answer motion to dismiss a declaratory judgment action is whether a cause of action for declaratory relief is set forth, not whether the plaintiff is entitled to a favorable declaration." Palm v. Tuckahoe Union Free School District, 95 A.D.3d 1087, 1089, 944 N.Y.S.2d 291 (2d Dept. 2012) (alterations, quotations and citation omitted); see also State Farm Mutual Automobile Ins. Co. v. Anikeyeva, 89 A.D.3d 1009, 1010-11, 934 N.Y.S.2d 196 (2d Dept. 2011); Matter of Tilcon New York, Inc. v. Town of Poughkeepsie, 87 A.D.3d 1148,

1150, 930 N.Y.S.2d 34 (2d Dept. 2011). "Therefore, the allegations must demonstrate the existence of a bona fide justiciable controversy * * *, defined as a real dispute between adverse parties, involving substantial legal interests for which a declaration of rights will have some practical effect." Palm, 95 A.D.3d at 1089, 944 N.Y.S.2d 291 (quotations and citations omitted); see also Rabiner, 749 F. Supp. 2d at 102 ("To state a claim for a declaratory judgment, a plaintiff must allege that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); Metropolis Seaport Associates, L.P. v. South Street Seaport Corp., 253 A.D.2d 663, 664, 678 N.Y.S.2d 317 (1st Dept. 1998) (holding that the plaintiff's cause of action for declaratory relief "was properly sustained since the allegations of the complaint sufficiently set forth a bona fide justiciable controversy, the resolution of which may entail a declaration of the parties' rights and obligations.") "The remedy of a declaratory judgment is proper when the pleadings and affidavits submitted state a real controversy involving substantial legal interests, and it has been shown that a declaratory judgment would be useful." Reliance Ins. Co. of New York v. Garsart Building Corp., 122 A.D.2d 128, 131, 505 N.Y.S.2d 160 (2d Dept. 1986); see also Anikeyeva, 89 A.D.3d at 1011, 934 N.Y.S.2d 196 ("[W]here a cause of action is sufficient to invoke the court's power to render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy, * * * a motion to dismiss that cause of action should be denied." (quotations and citations omitted)); Tilcon New York, 87 A.D.3d at 1150, 930 N.Y.S.2d 34 (accord).

In their complaint, the Lia parties allege, *inter alia*, that Lia purchased the East Windsor Property in compliance with American Honda's property requirements for the open point, (Lia

Compl., ¶ 25); that Lia purchased the EW Liquor license upon American Honda's rejection of the

East Windsor Property in order to otherwise enhance the East Windsor Property, (Lia Compl., ¶

28); that Lia purchased the Hamilton Property upon which the Hamilton Honda Dealership was

ultimately built; that Lia purchased, through certain limited liability companies, real property

contiguous to the Hamilton Property "pursuant to the 2003 Agreement," (Lia Compl., ¶ 28),

which the Lia parties refer to as Hamilton Honda's "related assets"; and that Saporito improperly

transferred a mortgage encumbering the Hamilton Honda Dealership's property to the contiguous

property referred to as the "Frank's Nursery Property," (Lia Compl., ¶ 35). Thus, the allegations

in the Lia complaint are sufficient at the pleadings stage to state the existence of a bona fide

justiciable controversy, i.e., a real dispute between the Lia parties and defendants involving

substantial legal interests in real and personal property for which a declaration of rights will have

some practical effect. Accordingly, the branch of Armstead's motion seeking dismissal of the

Lia parties' declaratory judgment claim (second claim for relief) for failure to state a claim for

relief is denied.


### 3.    Breach of Fiduciary Duty Claim (Third Cause of Action)

To state a cause of action to recover damages for breach of fiduciary duty under New

York law, a plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) misconduct by

the defendant, and (3) damages directly caused by the defendant's misconduct." Parekh v. Cain,

96 A.D.3d 812, 816, 948 N.Y.S.2d 72 (2d Dept. 2012) (quoting Rut v. Young Adult Institute,

Inc., 74 A.D.3d 776, 777, 901 N.Y.S.2d 715 (2d Dept. 2010)); see also Manhattan Motorcars,

Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 214 (S.D.N.Y. 2007). A cause of

action seeking damages for breach of fiduciary duty must be pleaded with particularity pursuant to Section 3016(b) of the New York Civil Practice Law and Rules, Parekh, 96 A.D.3d at 816, 948 N.Y.S.2d 72, i.e., "the circumstances constituting the wrong [must] be stated in detail." N.Y. C.P.L.R. § 3016(b).

In New York, "a fiduciary relationship embraces not only those the law has long adopted * * * but also more informal relationships where it can be readily seen that one party reasonably trusted another." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). "A fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." St. John's University, New York v. Bolton, 757 F.Supp.2d 144, 166 (E.D.N.Y. 2010); see also Oddo Asset Management v. Barclays Bank PLC, 19 N.Y.3d 584, 592-93, 950 N.Y.S.2d 325, 973 N.E.2d 735 (N.Y. 2012), rearg. denied — N.E.2d —, 2012 WL 5200366 (N.Y. Oct. 23, 2012); EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11, 19, 799 N.Y.S.2d 170, 832 N.E.2d 26 (N.Y. 2005). "In New York, the existence of a fiduciary relationship is determined on a case-by-case basis," St. John's University, 757 F.Supp.2d at 166 (quoting Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 168, 521 N.Y.S.2d 672 (1st Dept. 1987)); see also Barbagallo v. Marcum LLP, 820 F. Supp. 2d 429, 446 (E.D.N.Y. 2011), and "requires a fact-specific inquiry implicating all the circumstances and conduct relevant to understanding the parties' relationship." St. John's University, 757 F.Supp.2d at 166; see also Oddo Asset Management, 19 N.Y.3d at 593, 950 N.Y.S.2d 325, EBC I, 5 N.Y.3d at 19. There are four (4) elements "essential to the establishment of a fiduciary relationship: (1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or

accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." St. John's University, 757 F.Supp.2d at 166; see also Barbagallo, 820 F.Supp.2d at 446; Manhattan Motorcars, 244 F.R.D. at 214-15; Atlantis Information Technology, GmbH v. CA, Inc., 485 F.Supp.2d 224, 231 (E.D.N.Y. 2007); Osan Ltd. v. Accenture LLP, 454 F.Supp.2d 46, 56-7 (E.D.N.Y. 2006). "Who is the 'stronger' and who is the 'weaker' party depends on the context of the particular issue in question." Barbagallo, 820 F. Supp. 2d at 446. "At the heart of the fiduciary relationship lies reliance, and de facto control and dominance." Krys v. Butt, No. 11-1695-cv, — Fed. Appx. —, 2012 WL 2331485, at * 1 (2d Cir. June 20, 2012) (summary order).

"Where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency." St. John's University, 757 F.Supp.2d at 166 (quotations, alterations and citations omitted); see also EBC I, 5 N.Y.3d at 19-20. "Beyond what may be memorialized in writing, a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge." Wiener v. Lazard Freres & Co., 241 A.D.2d 114, 672 N.Y.S.2d 8, 14 (1st Dept. 1998); see also St. John's University, 757 F. Supp. 2d at 167; Henneberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 459 (S.D.N.Y. 2006).

The Lia parties allege that "[t]he professional relationship cultivated over seven years of working for Lia in positions of increasing trust and responsibility established in Saporito a fiduciary duty of loyalty to Lia with respect to the dealerships he was managing, the [Hamilton Honda Dealership] Project, and the AHMC franchise that ultimately became Hamilton Honda." (Lia Compl., ¶ 68). However, there are no factual allegations in the Lia complaint from which it

may plausibly be inferred, *inter alia*, that Lia was ever in a position vulnerable to Saporito, i.e., that Saporito's position vis-a-vis the Hamilton Honda Dealership project was stronger than Lia's; that Saporito had superior expertise or knowledge relative to the Hamilton Honda Dealership project upon which Lia relied; that Saporito engaged in any misconduct with respect to the dealerships he managed while employed by Lia; or that Lia sustained any damages resulting from any misconduct by Saporito during his employment with Lia. Accordingly, the allegations in the Lia complaint are insufficient to demonstrate the existence of a fiduciary relationship between Saporito and Lia. Therefore, the branch of Saporito's motion seeking dismissal of the Lia parties' third cause of action for failure to state a claim for relief is granted and the Lia parties' third cause of action is dismissed in its entirety with prejudice.[6]

4.   Constructive Trust Claim (Fifth Cause of Action)[7]

Generally, under New York law, "a constructive trust may be imposed when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." Sharp v. Kosmalski, 40 N.Y.2d 119, 121, 386 N.Y.S.2d 72, 351 N.E.2d 721 (N.Y. 1976) (quotations, alterations and citations omitted). Ordinarily, a plaintiff must demonstrate the following four (4) requirements for the imposition of a constructive trust:

---

[6] In light of this determination, it is unnecessary to consider Saporito's remaining contentions seeking dismissal of the Lia parties' breach of fiduciary duty claims.

[7] Although the sub-heading of Armstead's memorandum of law indicates that he is also seeking dismissal of the Lia parties' sixth cause of action seeking damages for unjust enrichment for failure to state a claim upon which relief can be granted, (Armstead Mem., at 16), he does not set forth any argument in support of that contention. Accordingly, the branch of Armstead's motion seeking dismissal of the Lia parties' sixth cause of action for failure to state a claim for relief is denied.

28

"(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." Sharp, 40 N.Y.2d at 121, 386 N.Y.S.2d 72; see also Counihan v. Allstate Ins. Co., 194 F.3d 357, 361-62 (2d Cir. 1999); In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992); Rogers v. Rogers, 63 N.Y.2d 582, 586, 483 N.Y.S.2d 976, 473 N.E.2d 226 (N.Y. 1984) ("A constructive trust may be imposed in favor of one who transfers property in reliance on a promise originating in a confidential relationship where the transfer results in the unjust enrichment of the holder.") However, "the New York Courts do not insist that a constructive trust must fit within the framework of th[o]se elements," Counihan, 194 F.3d at 362, because "[a] constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose." Id., at 360; see also In re Koreag, 961 F.2d at 352 ("Although the[] [four factors] provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." (quotations and citations omitted)). "What the New York courts do insist upon is a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." Counihan, 194 F.3d at 362; see also In re First Central Financial Corp., 377 F.3d 209, 212 (2d Cir. 2004) (holding that the unjust enrichment element "is the most important since the purpose of the constructive trust is prevention of unjust enrichment." (quotations and citation omitted)).

"A person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust." Sharp, 40 N.Y.2d at 123, 386 N.Y.S.2d 72; see also Counihan, 194 F.3d at 361 ("Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be

29

inequitable to retain.") "A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties * * * [and] reached through the application of principles of equity." Sharp, 40 N.Y.2d at 123, 386 N.Y.S.2d 72; see also In re First Central, 377 F.3d at 213; Counihan, 194 F.3d at 361. Although the purpose of a constructive trust is to prevent unjust enrichment, see Simonds v. Simonds, 45 N.Y.2d 233, 241, 408 N.Y.S.2d 359, 380 N.E.2d 189 (N.Y. 1978), "unjust enrichment does not necessarily implicate the performance of a wrongful act." Counihan, 194 F.3d at 361; see also In re Koreag, 961 F.2d at 354 ("[T]he key factor is unjust enrichment, not willfully wrongful conduct."); Simonds, 45 N.Y.2d at 242, 408 N.Y.S.2d 359 ("Unjust enrichment * * * does not require the performance of any wrongful act by the one enriched.") "What is necessary is that the court identify a party who is holding property under such circumstances that in equity and good conscience he ought not to retain it." Counihan, 194 F.3d at 351 (quotations and citation omitted); see also Simonds, 45 N.Y.2d at 242, 408 N.Y.S.2d 359. "Equity is the essential component with which a court must concern itself." Counihan, 194 F.3d at 361; see also In re Ades and Berg Group Investors, 550 F.3d 240, 245 (2d Cir. 2008) ("[E]quity and good conscience are the fundamental requirements for imposition of a constructive trust." (quotations, alterations and citation omitted)).

"[T]he lack of a fiduciary relationship does not defeat the imposition of a constructive trust." Counihan, 194 F.3d at 362; see also In re Koreag, 961 F.2d at 353-55 ("Although a fiduciary relationship is one of the factors cited by New York courts, the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity. * * * New York courts have at times dispensed with one or more of the[] requirements.").

Moreover, the requisite promise need not be express and "may be implied or inferred from the very transaction itself." Sharp, 40 N.Y.2d at 122, 386 N.Y.S.2d 72; see also In re Ades and Berg, 550 F.3d at 245; Counihan, 194 F.3d at 362.

Contrary to Armstead's contention, the fact that the Lia parties never had any legal interest in the property upon which they seek to impose a constructive trust is not fatal to their constructive trust claim. "New York courts have deemed the transfer element satisfied where funds, time and effort were contributed to in reliance on a promise to share in some interest in property, even though no transfer actually occurred." Reyes v. Reyes, No. 11-cv-2536, 2012 WL 4058037, at * 11 (E.D.N.Y. Sept. 14, 2012) (quoting Moak v. Raynor, 28 A.D.3d 900, 902, 814 N.Y.S.2d 289 (3rd Dept. 2006)); see also Augur v. Augur, 90 A.D.3d 1111, 1113, 933 N.Y.S.2d 454 (3rd Dept. 2011); Marini v. Lombardo, 79 A.D.3d 932, 934, 912 N.Y.S.2d 693 (2d Dept. 2010). Accordingly, the branch of Armstead's motion seeking dismissal of the Lia parties' constructive trust claim (fifth claim for relief) for failure to state a claim for relief is denied.

5. Unclean Hands

Defendants contend, however, that the Lia parties' unjust enrichment, constructive trust and accounting claims are barred by the doctrine of unclean hands because Lia has given testimony to a New Jersey tribunal that is inconsistent with the Lia parties' allegations in this action.

The equitable maxim that "he who comes into equity must come with clean hands," Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) (quotations and citation omitted); PenneCom B.V.

v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004), "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief * * *." Precision Instrument, 324 U.S. at 814, 65 S. Ct. 993; see also Motorola Credit Corp. v. Uzan, 561 F.3d 123, 128-29 (2d Cir. 2009). Thus, if established, the doctrine of unclean hands bars a claim seeking equitable relief, such as an unjust enrichment or constructive trust claim. Columbo v. Columbo, 50 A.D.3d 617, 619, 856 N.Y.S.2d 159 (2d Dept. 2008) ("A party seeking an equitable remedy must not have unclean hands."); see, e.g. 1133 Taconic, LLC v. Lartrym Services, Inc., 85 A.D.3d 992, 993, 925 N.Y.S.2d 840 (2d Dept. 2011) (unjust enrichment claim); Dolny v. Borck, 61 A.D.3d 817, 817, 877 N.Y.S.2d 223 (2d Dept. 2009) (constructive trust claim).

In New York, the doctrine of unclean hands requires a defendant to prove (1) that the plaintiff is guilty of immoral, unconscionable conduct directly related to the subject matter in litigation; (2) that the conduct was relied upon by the defendant; and (3) that the defendant was injured thereby. Hettinger v. Kleinman, 733 F. Supp. 2d 421, 446 (S.D.N.Y. 2010); see also PenneCom, 372 F.3d at 493; MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682, 712 (S.D.N.Y. 2012); Sheehy v. New Century Mortgage Corp., 690 F. Supp. 2d 51, 68-9 (E.D.N.Y. 2010); National Distillers & Chemical Corp. v. Seyopp Corp., 17 N.Y.2d 12, 15-6, 267 N.Y.S.2d 193, 214 N.E.2d 361 (N.Y. 1966).

Defendants' failure to allege that they relied upon, or were injured in any way, by any unconscionable conduct on the part of the Lia parties relating to the subject matter of this litigation is fatal to their unclean hands defense. Accordingly, the branches of defendants' motions seeking dismissal of the Lia parties' unjust enrichment, constructive trust and

accounting claims based upon the doctrine of unclean hands are denied.

D.   Judicial Estoppel

Defendants contend that the Lia parties' claims are barred by the doctrine of judicial estoppel because they advanced positions in a prior administrative proceeding that are inconsistent with those they advance in this case.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); see also Intellivision v. Microsoft Corp., No. 11-1657-cv, — Fed. Appx. —, 2012 WL 2086297, at * 2 (2d Cir. June 11, 2012) (summary order). The doctrine "prevents a party from asserting a factual position clearly inconsistent with a position previously advanced by that party and adopted by the court in some manner." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011) (quotations, alterations and citation omitted); see also New Hampshire, 532 U.S. at 749, 121 S. Ct. 1808 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quotations and citation omitted)). Typically, the doctrine will apply if: "1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." DeRosa v. National Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (internal quotations and citation omitted); see also New Hampshire, 532 U.S. at 750, 121 S. Ct.

33

1808; In re Adelphia Recovery Trust, 634 F.3d 678, 695-96 (2d Cir. 2011) (accord). "Because the doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." Republic of Ecuador, 638 F.3d at 397; see also In re Adelphia Recovery Trust, 634 F.3d at 696 (accord); DeRosa, 595 F.3d at 103 (accord). "This latter requirement means that judicial estoppel may only apply where the earlier tribunal accepted the accuracy of the litigant's statements." In re Adelphia Recovery Trust, 634 F.3d at 696; see also Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1249, 176 L. Ed. 2d 18 (2010) (holding that judicial estoppel "typically applies when, among other things, a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." (quotations and citation omitted)).

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," Republic of Ecuador, 638 F.3d at 397 (quotations and citation omitted); see also New Hampshire, 532 U.S. at 749-50, 121 S. Ct. 1808, "not to look for, or punish, outright lies." In re Adelphia Recovery Trust, 634 F.3d at 696. "[A] party puts the integrity of the judicial process at risk not only when it knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." Id. "[T]he proper focus is on the objective conduct of a party or its counsel." Id. "[I]n considering whether to apply judicial estoppel a court must focus on the conduct of the party to be estopped, not the party seeking estoppel." Id., at 698. "[A]lthough a court is unlikely to be asked to apply judicial estoppel

when no party has been prejudiced, it is unfair *advantage* to the potentially prejudiced party's adversary that is the touchstone of the doctrine." Id., at 698-99 (emphasis in original).

"Judicial estoppel applies to sworn statements to administrative agencies * * * as well as to the courts[,]" DeRosa, 595 F.3d at 103; see also Mitchell v. Washingtonville Central School District, 190 F.3d 1, 6 (2d Cir. 1999); Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir. 1997); BeautyBank, Inc. v. Harvey Prince LLP, 811 F. Supp. 2d 949, 958 (S.D.N.Y. 2011); American Manufacturers Mut. Ins. Co. v. Payton Lane Nursing Home, Inc., 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010), and applies not only against the actual parties to a prior litigation, but also against a party that is in privity to a party in the prior litigation. Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 996 (9th Cir. 2012); see also In re Johnson, 518 F.2d 246, 252 (10th Cir. 1975); National Union Fire Ins. Co. v. Allfirst Bank, 282 F. Supp. 2d 339, 348 (D.Md. 2003).

Contrary to the Lia parties' contention, this Court may take judicial notice of an initial decision rendered by an administrative law judge ("ALJ") on April 12, 2006 in the statutory protest proceeding filed by Willis Honda with the State of New Jersey Department of Law and Public Safety Motor Vehicle Franchise Committee ("NJMVFC") pursuant to the New Jersey Automotive Dealer Statute, N.J.S.A. 56:10-16-25. In that initial decision, the ALJ made the following findings of fact and conclusions of law based, in part, upon Lia's deposition testimony in that proceeding, (Petitioner's Exhibit, P-183 and P-184 at the hearing):

> "Another red herring is [Willis Honda's] accusation that Don Lia was or is involved in the ownership or operation of All Star.[8] * * * Lia, according to

---

[8] The ALJ found that "All Star is a limited liability company that is owned jointly by Jess Armstead (51% owner) and Michael Saporito (49% owner)," which sought "to build a new Honda dealership facility in Hamilton Township * * *." (Declaration of Andrew Paul Cooper,

[Willis Honda], has a hidden interest in All Star. Lia testified at a deposition, but was not called to testify at the hearing. After sifting through all of the claims by [Willis Honda] regarding Lia, the evidence is clear and uncontradictory that Lia has net [sic] ownership interest in All Star, does not own the land upon which All Star is to be located, has not invested any monies in All Star and will not be involved in the operation of All Star. * * * [Willis Honda] offers no evidence of any improper motive by Honda * * * [and] simply points to red herrings such as Don Lia or the issue of East Windsor. These are not relevant matters and, in any event, demonstrate no bad faith by Honda."

(Copper Decl., Ex. 2 at ¶ 45 and at p. 15). The ALJ recommended that Willis Honda's protest be dismissed.

In a final decision dated August 25, 2006, the NJMVFC concurred with the ALJ's initial decision, affirmed the ALJ's recommendation to dismiss Willis Honda's protest, incorporated the ALJ's findings of fact and conclusions of law in their entirety as "supported by substantial credible evidence in the record" and dismissed Willis Honda's protest. (Cooper Decl., Ex. 4).

Since the transcript of Lia's deposition testimony was admitted as an exhibit at the administrative hearing, it is also a public record of which this Court may take judicial notice. During the deposition, Lia testified, in relevant part, as follows:

> Q.  Do you have any proposed interest in [the proposal to establish a new Honda dealership in Hamilton Square, New Jersey]?
>
> A.  No.
>
> Q.  Do you have any proposed interest in that dealership?
>
> A.  No.
>
> Q.  Do you have any ownership of the land upon which [the dealership] is to be situated?

---

Esq. in Support of Defendant Jesse Armstead's Motion Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to Dismiss the Complaint ["Cooper Decl."], Ex. 2 at ¶ 3).

A.     Uh-uh, no.

Q.     Have you invested any monies in furtherance of that dealership?

A.     Furtherance?

Q.     Have you invested any monies in any way, shape or form that relate to the establishment of a dealership in Hamilton Square, New Jersey?

A.     No.

Q.     You have invested some money in real estate in Hamilton Square, have you not?

A.     Yes.

Q.     Why did you do that?

A.     Real estate investment.

* * *

Q.     Just out of the blue a real estate investment?

A.     Yeah.

Q.     You didn't do it in conjunction with Mr. Saporito's interest in a dealership?

A.     No.

Q.     Was it just a coincidence that you invested in property that is where the dealership is going to be?

A.     Yeah.

* * *

Q.     And your investment had absolutely nothing to do with the proposed Honda dealership?

* * *

A.     Well, * * * it was a reason why I knew that the property was available.

37

Q.   How did you know it was available?

A.   Through Mike [Saporito].

* * *

Q.   And why was that place of any interest to you?

A.   Looked like a great area.

* * *

Q.   Did you invest any money in the East Windsor location?

A.   No.

* * *

Q.   You haven't lent [Saporito] any money with respect to the acquisition of any dealership?

A.   No.

* * *

Q.   And neither you nor any entity of yours will have any financial relationship in any way at all in conjunction with that new Honda dealership, is that correct?

A.   Yes.

Q.   So as far as you know, all of the monies that are necessary and appropriate for establishing that dealership are coming from sources other than you or any of your entities, correct?

A.   Yes.

* * *

Q.   Are there any, what we call in the trade, side letters between you and Mr. Saporito and Mr. Armstead with regard to any of that property?

A.   No.

Q. None at all?

A. No.

Q. Are there any side understandings orally?

A. No.

Q. You have no agreements with Mr. Saporito verbally with respect to that property?

A. Nope.

Q. And no understanding about how you might acquire any interest in the dealership directly, correct?

A. The open point dealership you're talking about?

Q. The Hamilton Square proposed dealership.

A. Right, no, no.

Q. So what you're saying for this record is that you don't have any interest, you won't have any interest, there is no agreement to have an interest, is that correct?

A. Yes.

(Cooper Decl., Ex. 3). That testimony by Lia is clearly inconsistent with all of the Lia parties' claims in this action, with the exception of N&R Automotive, Inc.'s breach of contract claim against Saporito (eighth claim for relief) which, as set forth above, is dismissed as time-barred.

The case Johnson v. Levy, 812 F. Supp. 2d 167 (E.D.N.Y. 2011), as well as the other cases upon which the Lia parties rely in support of their position that this Court cannot take judicial notice of Lia's deposition testimony in the administrative proceeding, are distinguishable. In Johnson, the defendants submitted portions of the transcripts of the deposition testimony of three (3) of the parties from a previous action to controvert certain

factual allegations made by the plaintiffs in their complaint. Id. at 177. In other words, the prior deposition testimony in Johnson was improperly submitted for the truth of the matters asserted therein. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, * * * not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); also Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (accord). Similarly, in Global Network, 458 F.3d at 157, the extraneous documents were improperly used by the Court to make a factual finding regarding the plaintiff's ability to pay the defendant, not to establish the existence of the documents, and in Tierney v. Omnicom Group, Inc., No. 06 Civ. 14302, 2007 WL 2012412, at *4 (S.D.N.Y. July 11, 2007), the prior inconsistent statements were offered for the truth of the matter, i.e., the date when the plaintiff's employment relationship with the defendant had ceased, not just for the fact that such prior inconsistent statements were made.[9]

In this case, however, the deposition testimony of Lia is not asserted for the truth of the matters asserted in the administrative proceeding, i.e., this Court is not being asked to accept Lia's deposition testimony in the administrative proceeding over the facts alleged in the Lia complaint. Rather, Lia's deposition testimony is offered to show that certain statements, regardless of their truth, were made by him during the prior administrative proceeding. "[I]t is proper to take judicial notice of the *fact* that * * * prior lawsuits * * * contained certain information, without regard to the truth of their contents." Staehr v. Hartford Financial Services

---

[9] In Iannuzzi v. Washington Mutual Bank, No. 07-cv-964, 2008 WL 3978189, at * 6 (E.D.N.Y. Aug. 21, 2008), the other case upon which the Lia parties rely, the Court, in a footnote, refused to consider references to evidence from deposition transcripts in another action.

Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original); see also Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice [of public documents], it does so in order to determine what statements they contained- but * * * not for the truth of the matters asserted." (quotations, alterations, emphasis and citations omitted)). Thus, I may properly take judicial notice of the fact that Lia made certain statements during his deposition in the administrative proceeding that are inconsistent with the factual allegations in the Lia complaint. For the purposes of judicial estoppel, it matters not which set of facts, i.e., those to which Lia testified in the administrative proceeding or those alleged in the Lia complaint, are true, only that there exists two (2) clearly inconsistent sets of facts.

Likewise, the ALJ's findings of fact in the administrative proceeding are not offered, or considered, to establish the truth of those findings. Rather, the findings of fact and decisions in the administrative proceeding are considered for the purpose of determining the basis therefor, i.e., whether the ALJ relied upon and credited Lia's deposition testimony in that proceeding. Thus, I take judicial notice only of the fact that the ALJ credited the accuracy of Lia's deposition testimony in the administrative proceeding and that the NJMVFC concurred with the ALJ's findings and conclusions.

All of the elements for the application of the doctrine of judicial estoppel are satisfied in this case. The Lia parties' claims in this case are clearly inconsistent with Lia's testimony in the previous administrative proceeding; Lia is the "the sole principal" of N.R. Automotive, Inc. and managing member of Mobile Management, LLC[10], (Lia Compl., ¶ 1), and, thus, those plaintiffs

---

[10] Mobile Management, LLC manages all of the retail automobile dealerships owned by Lia, (Lia Compl., ¶ 8), and was the entity that paid Saporito's salary, benefits and bonuses during his employment with Lia (Lia Compl., ¶¶ 9, 72).

are in privity to Lia for estoppel purposes, see, e.g. Wang v. Pataki, 396 F. Supp. 2d 446, 455 (S.D.N.Y. 2005); Metcalf v. Merrill Lynch, Pierce, Fenner & Smith, No. 4:11-cv-127, — F. Supp. 2d —, 2012 WL 4747268, at * 9 (M.D. Pa. Oct. 5, 2012); Direct Marketing Concepts, Inc. v. Trudeau, 266 F. Supp. 2d 794, 796 (N.D. Ill 2003); the ALJ adopted Lia's former position and accepted the accuracy of his deposition testimony in the prior administrative proceeding; and the Lia parties would derive an unfair advantage if allowed to disavow any interest in the Hamilton Honda Dealership, property and assets in order to avoid a statutory protest which, if successful, could have prevented the Hamilton Honda Dealership from opening, only to later be allowed to change their position in this case, e.g., to claim a majority interest in the seemingly successful Hamilton Honda Dealership entitled to a share of its profits. Clearly, judicial acceptance of the Lia parties' claims in this case would create the perception that either the New Jersey tribunal or this Court has been misled by Lia, thereby undermining the integrity of the judicial process. Accordingly, the doctrine of judicial estoppel is applicable to bar the Lia parties' first through seventh claims for relief in this action. Therefore, the branches of defendants' motions seeking dismissal of the Lia complaint as barred by the doctrine of judicial estoppel is granted to the extent that the Lia parties' first through seventh claims for relief are dismissed in their entirety with prejudice as barred by the doctrine of judicial estoppel.

III. Conclusion

For the foregoing reasons, the branches of Saporito's motion seeking dismissal of the Lia parties' breach of fiduciary duty claims (third and fourth claims for relief) and breach of contract claim (eighth claim for relief) are granted and those claims are dismissed in their entirety with

prejudice; the branches of defendants' motions seeking dismissal of the Lia complaint in its entirety as barred by the doctrine of judicial estoppel are granted to the extent that the Lia parties' first through seventh claims for relief are dismissed in their entirety with prejudice as barred by the doctrine of judicial estoppel; and the motions are otherwise denied. The Clerk of Court shall sever the Willis Honda action from the Lia action, reopen the Willis Honda action under docket number 11-cv-4144, enter judgment in favor of defendants in the Lia action and then close the Lia action.

SO ORDERED.

s/ Sandra J. Feuerstein

_____
Sandra J. Feuerstein
United States District Judge

Dated:      November 6, 2012
                Central Islip, New York